Jocelyn Mary HANDY

v.

NEW ORLEANS HILTON HOTEL.

Civ. A. No. 81–937.

United States District Court,
E. D. Louisiana.

Feb. 3, 1982.

Robert L. Danner, Jr., New Orleans, La., for plaintiff.

Edwin O. Schlesinger, New Orleans, La., for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

BEER, District Judge.

To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any conclusions of law constitute findings of fact, they are so adopted.

#### Findings of Fact

1. Plaintiff, Jocelyn Mary Handy, is a black female and is a former employee of defendant.

2. Defendant in this action is the Hilton Hotels Corporation, doing business in the Eastern District of Louisiana as the New Orleans Hilton Hotel.

3. Handy was hired by the Hilton in January, 1979, to work for $3.75 per hour as a daytime hostess in the hotel's Cafe Bromeliad. Prior to her employment at the Hilton, Handy had worked as a cashier in the room service department and the gift shop at another local hotel for approximately one and one half years, and as a dining room hostess for two years at a local restaurant, and had spent some time prior to that employment working at a friend's bar.

4. On the basis of her performance as hostess and her then acquired experience, Handy was promoted in January, 1980, to the position of daytime assistant manager of the Cafe Bromeliad with a yearly salary of $11,700.

5. While serving as assistant manager of the restaurant through May, 1980, Handy performed her job competently.

6. At the end of May, 1980, the Hilton transferred (the Hilton considered it a promotion) Handy to the hotel's Room Service Department where she served as assistant manager. In her new position, Handy continued to receive the same base salary of $11,700, but also received an additional amount equal to 1% of the gratuities attributable to the Hilton's 82 hospitality suites. From three years past experience, the fiscal effect of this 1% share constituted added income in the range of $3,000 to $5,000.

7. Shortly after the transfer, Handy filed a charge of employment discrimination with the Equal Employment Opportunity Commission, alleging that the Hilton had discriminated against her on the basis of her race and gender, and had violated the Equal Pay Act. Handy claimed that her rate of pay and the transfer to the Room Service Department were the result of discriminatory employment practices.

8. Once in the Room Service Department, Handy found herself performing tasks that were assigned to her staff, such as pushing pastry carts and filling orders. Believing that fellow employees and hotel management were making her job as assistant manager of Room Service more difficult to perform because of her having filed a discrimination charge, Handy left the Hilton on July 19, 1980.

9. The Hilton's hiring and salary decisions with regard to managerial positions in the Cafe Bromeliad were largely governed by the candidate's prior similar work experience. Therefore, previous experience as a restaurant manager was very strongly favored, and was rewarded with a larger salary. When the Hilton considered a current employee for a managerial position, the candidate's work record with the Hilton was thoroughly examined as was outside prior experience.

10. Immediately preceding Handy as daytime assistant manager of Cafe Bromeliad was Gale Wilkins, a white female, who started in the position in December, 1979. Wilkins received a yearly salary of $12,000, but her remuneration in this amount was set as a result of her participation in Hilton's Personnel Development Program. This particular program for previously selected employees was run by Hilton's corporate headquarters and the salary paid to the participants was not subject to the control of the individual hotels. Among other jobs, Wilkins had previously worked as a manager for one of Hilton's restaurants in another city.

11. Mark Roe, a white male, preceded Wilkins as the Bromeliad's daytime assistant manager. By the end of his one and one half year term in that position, Roe was receiving a yearly salary of $12,000. By the time Roe reached that salary level, he had been with the Hilton for over a year and had already once served as Bromeliad's daytime assistant manager before being moved to other areas in the hotel and being moved back to the position permanently.

12. Following Handy's transfer to the Room Service Department, Janie Lambert, a white female, became daytime assistant manager of Cafe Bromeliad at an annual salary of $14,000. Lambert's previous employment history included almost four years of managerial experience at a restaurant of another local hotel.

13. At all times relevant to this action, the daytime assistant manager of the Cafe Bromeliad was responsible primarily for the proper set-up of the buffet lunch. The daytime assistant manager supervised approximately 16 employees, including waiters/waitresses, buspersons, a hostess, a cook and a cashier. The daytime assistant manager, who was not needed at all times in the dining area, was responsible for maintaining the payroll records for both the day and nighttime shifts of the restaurant. In contrast and because the evening menu was much more detailed than the daytime brunch set-up, the nighttime assistant manager had more extensive responsibilities and also served as a maitre d'. The night assistant manager supervised a much larger number of employees, including a nighttime staff similar to those mentioned above, as well as a bartender, bar waiters/waitresses and oyster shuckers. Moreover, neither the food and beverage director nor the assistant director were normally on the premises during the evening, so the nighttime assistant manager was expected to resolve any problems which might arise. During the day, these food and beverage personnel were generally available.

14. Several people held the position of nighttime assistant manager of the Cafe Bromeliad near the time Handy served as daytime assistant manager. Carl Gordon, a white male, received an annual salary of $14,000 for this position. When Gordon was first hired by the Hilton, he had eight years experience as a restaurant waiter and captain and had five months experience as a restaurant manager.

15. Rainer Landau, a white male, also held the position of nighttime assistant manager for which he received an annual salary of $15,000. Landau's prior experience included two years as a waiter, two years of supervising a chain of thirteen restaurants, and over seven years as owner of two local restaurants.

16. Lisa Salvaggio, a white female, succeeded Landau in the position and received, at first, a yearly salary of $10,200. Several months later, Salvaggio was promoted to manager of the restaurant at an annual salary of $14,000. Salvaggio's prior work experience included almost two years as a restaurant manager and approximately six months in other restaurant positions.

17. The Hilton routinely transfers its employees from one position to another in order to fill vacancies or meet existing needs. Inasmuch as transfers are considered by the Hilton as the means of advancing within the hotel's organization, Hilton policy is to expect its employees to routinely make such in-house movements. In the event an employee opposes a transfer, the employee may follow grievance procedures set forth in the Hilton's employee handbook. The procedure allows an aggrieved employee to communicate his problem to his immediate supervisor. If no satisfactory result is achieved, the employee may process his grievance to the department head, the Director of Personnel and then, if necessary, the matter will be referred to the General Manager of the hotel.

18. Handy did not comply with the hotel's stated procedure in making her dissatisfaction with her transfer known to Hilton's management.

19. In Handy's case, her transfer to assistant manager of Room Service was considered a promotion by the Hilton because the job entailed greater responsibilities and more compensation. Handy was chosen for the position because she was considered most qualified for it. At the time of her transfer, Handy was told that this 1% share of the gratuities would, on the basis of prior experience which were of record, result in an additional three to four thousand dollars per year. In fact, John Tomazinis, a white male, who preceded Handy in the same position, received over $6,500 as his 1% share of the gratuities in 1979. Tomazinis' base salary was $11,400. And, as it turned out, Handy's successor, Charles Banta, also a white male, earned over $7,000 from his 1% share of the gratuities for the last quarter of 1980 and the first three quarters of 1981. Banta's base salary was $11,400.

20. For the approximate six weeks that Handy worked as assistant manager of Room Service, her 1% share of the gratuities amounted to $477.73. This figure, annualized, would be about $4,000.

21. The duties that justified the greater compensation as assistant manager of Room Service were not only to supervise the employees who filled the room service orders, set up the food carts and cleaned utensils, but also to actually help in performing these tasks when the department got very busy. What Handy perceived as onerous and menial duties resulting only from her having filed a discrimination charge appear to me to have been pretty much the normal rigors of the job as assistant manager of Room Service.

22. At the time Handy was employed by the Hilton, approximately four of thirty manager positions were held by black males or females.

### Conclusions of Law

1. This court has jurisdiction under 28 U.S.C. § 1343.

2. Plaintiff has brought this action under 42 U.S.C. § 2000e–5, 29 U.S.C. § 206(d)(1) and 42 U.S.C. § 1981, alleging that defendant has discriminated against plaintiff on the basis of her race and sex by paying her a lesser salary than that paid to her white/male counterparts and by transferring her to a position where she was harassed and required to perform menial tasks. Plaintiff seeks a declaratory judgment as to her rights, and for injunctive relief enjoining defendant from maintaining its discriminatory practices and policies against plaintiff. Plaintiff further seeks back pay, punitive damages and attorney fees.

3. Defendant contends that any pay differential between plaintiff and other employees was justified by non-discriminatory and work related factors. Defendant further contends that plaintiff's transfer was, in fact, a promotion.

4. Plaintiff's first claim is that the Hilton discriminated against her on the basis of her sex and race by not paying her a salary equivalent to salaries paid other persons who managed the Cafe Bromeliad. To establish a case under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and under the Equal Pay Act of 1963, 29 U.S.C. § 206(d), it must be proved that a

wage differential was based upon sex and that there was the performance of equal work for unequal compensation. *Orr v. Frank R. MacNeill & Son, Inc.*, 511 F.2d 166, 171 (5th Cir. 1975). Therefore, inasmuch as the nighttime assistant manager of the Cafe Bromeliad was entrusted with greater responsibilities in terms of the tasks and the number of people supervised, the salaries earned by these people, Gordon, Landau and Salvaggio, cannot be considered in determining whether plaintiff received equal pay for equal work. In terms of the salaries earned by other daytime assistant managers of the Cafe Bromeliad, it is clear that salaries larger than Handy's were paid by the Hilton to Wilkins, Roe and Lambert, a white male and two white females. At the same time, however, each of these three people had previous managerial experience which enhanced their qualifications for the daytime assistant manager position. Moreover, the salary paid to Wilkins was fixed at corporate headquarters by the development program to which she had been selected. In contrast, Handy had no previous management experience. The evidence demonstrates that the Hilton hired and paid its employees in accordance with their qualifications. Accordingly, the higher salaries paid to Wilkins, Roe and Lambert clearly constitute "a differential based on any other factor other than sex" under the terms of the Equal Pay Act, 29 U.S.C. § 206(d)(1)(iv).

5. Assuming, *arguendo*, that plaintiff has made out a prima facie case of discrimination, the burden shifts to defendant to clearly explain the nondiscriminatory reasons for its actions. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 1097, 67 L.Ed.2d 207 (1981). The Hilton's reasons for paying Wilkins, Roe and Lambert a higher salary than that paid to Handy was to compensate them commensurate with their experience, thereby allowing the Hilton to maintain a competitive position in order to attract qualified personnel. Plaintiff has offered no evidence to controvert the Hilton's ex-

planation for its wage differential. Therefore, as to plaintiff's claim of a discriminatory wage differential, I conclude that defendant has met such burden of proof as is imposed upon it.

6. Plaintiff's claim also deals with the matter of her allegedly discriminatory transfer to the position of assistant manager of the Room Service department and allegations of subsequent harassment. The Hilton's explanation for the transfer is simply that the position became vacant due to an employee's resignation, and that Handy was considered best qualified for the position. There is no evidence of any underlying improper motive. Despite whatever dissatisfaction Handy had with regard to this transfer, she failed to communicate her concerns through the Hilton's established grievance procedure.

7. The Room Service position, at busy times, required the assistant manager to perform the jobs normally performed by its staff. These additional responsibilities entitled the Room Service assistant manager to greater compensation in the form of a share of the gratuities. The tasks complained of by plaintiff as excessive and demeaning (not managerial in nature) have been shown to be part of the job for which plaintiff was additionally compensated.

8. As for plaintiff's claim for violation of her civil rights under 42 U.S.C. § 1981, there is no evidence to show that defendant violated this statute. As previously discussed, plaintiff was paid commensurate with her qualifications while working in the Cafe Bromeliad, and was paid commensurate with her additional responsibilities while in the Room Service department. There has been no showing that plaintiff was deprived of any protection or right afforded her by the federal statute.

9. I conclude that there has been no showing of discriminatory pay or other unlawful employment practice by defendant on the basis of plaintiff's race or gender.

Counsel for defendant is instructed to prepare and submit a judgment consistent with these findings and conclusions.