689 F.2d 170
 29 Fair Empl.Prac.Cas. 1514,
30 Empl. Prac. Dec. P 33,056
Sylvester IRVING, Plaintiff-Appellee, Cross-Appellant,
v.
DUBUQUE PACKING COMPANY and Harold Cantrell,
Defendants-Appellants, Cross-Appellees.
 Nos. 80-2146, 80-2210.
 United States Court of Appeals,
Tenth Circuit.
 Sept. 23, 1982.
 
 Charles S. Fisher, Jr., of Fisher, Ochs & Heck, Topeka, Kan. (Robert D. Ochs, of Fisher, Ochs & Heck and Fred W. Phelps, Jr., of Phelps-Chartered, Topeka, Kan., with him on the brief), for plaintiff-appellee, cross-appellant.
 Brian G. Grace, Wichita, Kan. (William H. Bruckner of Alaniz, Bruckner & Sykes, Houston, Tex., with him on the brief), for defendants-appellants, cross-appellees.
 Before HOLLOWAY, BARRETT and LOGAN, Circuit Judges.
 BARRETT, Circuit Judge.
 
 
 1
 Dubuque Packing Company (Dubuque) and Harold Cantrell appeal from an adverse jury verdict finding that the actions of Dubuque and Cantrell amounted to a constructive discharge of Sylvester Irving from his employment with Dubuque in violation of 42 U.S.C.A. § 1981. Irving cross-appeals from the trial court's denial of his request for reinstatement, injunctive and other equitable relief. Pursuant to rule 28(h), Federal Rules of Appellate Procedure, 28 U.S.C.A., plaintiff Irving has been designated appellant in this appeal.
 
 
 2
 Irving is a black man who was employed at Dubuque's meat packing plant located at Wichita, Kansas until February 1978. Irving began his employment at the plant in 1965 at which time the plant was owned by a company other than Dubuque. Dubuque purchased the plant in 1970. Over the years, Irving worked his way up to assistant foreman in the cooler department. The evidence is undisputed that Irving was conscientious and a hard worker.
 
 
 3
 In February of 1977, defendant-appellee Cantrell was plant manager at Dubuque's Wichita plant. At that time a vacancy for the cooler foreman position occurred. Irving was well qualified for the position but nevertheless Cantrell hired a young white man, Maynard Wedmore, to occupy the position.
 
 
 4
 When Irving expressed his dismay at being passed over for the promotion, Cantrell told Irving that he (Irving) had equal status and equal pay to Wedmore. However, Irving subsequently discovered that Wedmore was actually earning more money than he. Irving confronted Cantrell with this fact and Cantrell agreed to get Irving a raise. Approximately four months later Irving did indeed get a raise although he still was not earning as much money as Wedmore. The evidence also established that Irving was doing laborer's work in addition to his supervisory duties. It is disputed as to whether Irving was required to do the extra work or voluntarily took it upon himself to perform it. In December of 1977 Irving, along with other supervisory personnel, was informed that only two raises would be awarded at that time. Wedmore was one of the recipients of the raises. Irving and other supervisory personnel were denied raises.
 
 
 5
 Finally, in February of 1978 an incident occurred that precipitated Irving's resignation. On that occasion, Cantrell discovered blood clots in some beef that had been loaded for transport out of the plant. Cantrell placed the blame on Irving and gave Irving a severe verbal reprimand. Irving, feeling he had been unjustly disciplined, decided he "could not take it anymore" and did not return to work thereafter.
 
 
 6
 Irving filed his complaint in the United States District Court for the District of Kansas on September 12, 1978. His complaint alleged, inter alia, that defendants Dubuque and Cantrell unlawfully discriminated against him on the basis of race by their failure to promote him to cooler foreman in February of 1977 and by constructively discharging him through their actions between February of 1977 and February of 1978. Irving alleged that defendants were in violation of 42 U.S.C.A. § 1981 and 42 U.S.C.A. § 2000e. The court dismissed Irving's claim under 42 U.S.C.A. § 2000e for lack of jurisdiction. Trial was had before the jury on Irving's claim under 42 U.S.C.A. § 1981. The jury returned a verdict in Irving's favor and against Dubuque and Cantrell on both claims of unlawful failure to promote and constructive discharge. The jury awarded Irving damages in the amount of $20,000 for the unlawful failure to promote, $100,000 to compensate Irving for the constructive discharge, and assessed $250,000 and $25,000 against Dubuque and Cantrell, respectively, as punitive damages. The trial court subsequently awarded Irving $125,000 in attorney fees and costs.
 
 
 7
 On appeal Dubuque and Cantrell contend that: (1) the trial court erred in failing to direct a verdict in defendants' favor on the issue of constructive discharge, (2) the trial court submitted to the jury an erroneous instruction on the issue of constructive discharge, (3) the trial court erred in admitting evidence concerning an allegedly racist attitude at Dubuque's plant in Dubuque, Iowa and the Dubuque, Iowa area in general, and (4) the amount of punitive damages and attorney fees awarded was excessive. Dubuque and Cantrell do not appeal the jury's finding that they unlawfully failed to promote Irving.
 
 
 8
 On his cross-appeal Irving contends that the trial court erred in failing to grant his request for reinstatement, injunctive relief and other equitable relief.
 
 
 9
 A recitation of the applicable law will aid us in our determination of the issues concerning constructive discharge raised by defendant-appellee.
 
 
 10
 Generally, a constructive discharge occurs when an employer deliberately makes or allows the employee's working conditions to become so intolerable that the employee has no other choice but to quit. Muller v. United States Steel Corporation, 509 F.2d 923 (10th Cir. 1975), cert. denied, 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975). The constructive discharge is only actionable under 42 U.S.C.A. § 1981 if it is motivated by factors such as race, sex or national origin. In other words, the employee must be subjected to employment practices which are discriminatory and which make the working conditions intolerable, thus forcing the employee to quit. Further, the employer's actions must be intended by the employer as an effort to force the employee to quit. Muller v. United States Steel Corporation, supra; Johnson v. Bunny Bread Co., 646 F.2d 1250 (8th Cir. 1981).
 
 
 11
 A finding of constructive discharge depends upon whether a reasonable man would view the working conditions as intolerable, not upon the subjective view of the employee-claimant. Muller v. United States Steel Corporation, supra; Bourque v. Powell Electrical Mfg. Co., 617 F.2d 61 (5th Cir. 1980); Alicea Rosado v. Garcia Santiago, 562 F.2d 114 (1st Cir. 1977); Johnson v. Bunny Bread Co., supra; Nolan v. Cleland, 482 F.Supp. 668 (N.D. Cal. 1979).
 
 
 12
 The cases applying the doctrine of constructive discharge have held that failure to promote, in and of itself is not sufficient to result in a constructive discharge. Grigsby v. North Miss. Medical Center, Inc., 586 F.2d 457 (5th Cir. 1978); Nolan v. Cleland, supra. Nor does an unlawful transfer, in and of itself, constitute a constructive discharge. Alicea Rosado v. Garcia Santiago, supra. Unequal pay standing alone does not amount to a constructive discharge. Borque v. Powell Electrical Mfg. Co., supra. Finally, casual and intermittent racial slurs do not always give rise to a constructive discharge, Johnson v. Bunny Bread, supra. "Although scarcely uniform, that case law does indicate a general reluctance to predicate a finding of constructive discharge upon the fact of discrimination." Clark v. Marsh, 665 F.2d 1168, 1173 (D.C. Cir. 1981).
 
 
 13
 Further, certain cases have held that a combination of some of these factors does not constitute constructive discharge. For example, in Muller v. United States Steel Corp., supra, a company's unlawful failure to promote in combination with a transfer to a position where promotion would be difficult, did not amount to constructive discharge. See also: Annot. 55 A.L.R. Fed. 418 § 6(b). "As these cases make clear, a finding that Clark was constructively discharged must be justified by the existence of certain 'aggravating factors.' " Clark v. Marsh, supra, at 1174. Each case, however, must be reviewed on its individual merits.
 
 
 14
 In the instant case, Irving bases his constructive discharge claim on (1) the fact that Cantrell lied to him concerning his status and pay as compared to Wedmore's, (2) that he was required to do laborer's work in addition to his supervisory work, (3) that he was blamed for problems which were not his responsibility, and (4) that he was passed over for the raises awarded in December, 1977.
 
 I.
 
 15
 With this background in mind, we must first decide whether the trial court erred in failing to grant defendant-appellees' motion for directed verdict on Irving's claim of constructive discharge.
 
 
 16
 We will not reverse the trial court's decision on a motion for directed verdict unless we find that the court's evaluation of the evidence was clearly erroneous. Kiner v. Northcutt, 424 F.2d 222 (10th Cir. 1970). On review of a motion for directed verdict, the evidence should be viewed in the light most favorable to the opposing party. If reasonable men could differ as to the inferences to be drawn from the facts in evidence, a motion for directed verdict should be denied. A motion for directed verdict "should be cautiously and sparingly granted." Black, Sivalls & Bryson, Inc. v. Keystone Steel Fab., 584 F.2d 946, 951 (10th Cir. 1978) quoting from Wilkin v. Sunbeam Corp., 377 F.2d 344, 347 (10th Cir. 1967).
 
 
 17
 In light of the foregoing standards, we cannot hold that the trial court erred in denying defendant-appellees' motion for directed verdict. There was some evidence from which a constructive discharge could be inferred. Thus, the issue was properly submitted to the jury where the evidence could be accorded its appropriate weight.
 
 II.
 
 18
 Dubuque and Cantrell further contend that even if the trial court properly submitted the claim of constructive discharge to the jury, the court nevertheless erred in its instruction to the jury on the claim.
 
 The court instructed the jury as follows:
 INSTRUCTION NO. 13
 
 19
 Plaintiff has claimed that he was constructively discharged by defendants because of his race. With respect to this claim of plaintiff, you are instructed as follows:
 
 
 20
 A constructive discharge occurs when an employer deliberately or intentionally makes an employee's working conditions so intolerable that the employee is forced to resign in order to escape those intolerable conditions. The employer can make working conditions intolerable by violating the Civil Rights Act, or allowing such violations to occur in the employment setting.
 
 
 21
 Specifically, defendant-appellees object to the last sentence of the instruction.[1] Defendant-appellees submit that the instruction implies that if the jury finds an unlawful failure to promote, which constitutes a violation of the Civil Rights Act, they must necessarily find a constructive discharge. This interpretation is contrary to our holding in Muller v. United States Steel Corporation, supra. We there held that an unlawful failure to promote does not amount to a constructive discharge.
 
 
 22
 When a party assigns error to the jury instructions, we must review the instruction as a whole. Marshall v. Ford Motor Company, 446 F.2d 712 (10th Cir. 1971). Our standard of review on appeal is:
 
 
 23
 ... (N)ot whether an instruction was faultless in every respect, but whether the jury, considering the instruction as a whole, was misled. Thus, only in those cases where the reviewing court has a substantial doubt whether the jury was fairly guided in its deliberations should the judgment be disturbed. (citations omitted).
 
 
 24
 Mid-Texas Communications v. American Tel. & Tel. Co., 615 F.2d 1372, 1390 (5th Cir. 1980), cert. denied, 449 U.S. 912, 101 S.Ct. 286, 66 L.Ed.2d 140 (1980).
 
 
 25
 Although we are not here reviewing the sufficiency of the evidence to support the jury finding of constructive discharge, the sufficiency of the evidence is a factor to consider in determining whether or not the jury was misled by the erroneous instruction. In that regard we must note that the evidence of constructive discharge, over and above the unlawful failure to promote, was weak. The conditions that Irving points to as constituting intolerable working conditions appeared to have been imposed in a racially neutral manner, i.e., both black and white supervisors were passed up for raises in December, 1977; Cantrell yelled at everybody. Also, evidence establishing that Cantrell lied to Irving concerning his pay and status as compared to Wedmore's could be interpreted as an effort by Cantrell to keep Irving on, rather than to get rid of Irving. After an extensive review of the record we are left with a "substantial" doubt as to whether or not the jury was misled by the instruction on constructive discharge.
 
 
 26
 Irving asserts that even if the instruction was misleading, any misunderstanding by the jury was cleared up when they considered the other instructions. Specifically, Irving calls our attention to Instructions Numbers 11 and 12 which read as follows:
 
 INSTRUCTION NO. 11
 
 27
 Plaintiff's claim for recovery is predicated upon a law passed by Congress many years ago, Title 42, United States Code, Section 1981, which reads, in pertinent part, as follows:
 
 
 28
 All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, ... and to the full and equal benefit of all laws ... as is enjoyed by white citizens ...
 
 
 29
 For purposes of this case, Section 1981 entitles a black person to equal opportunity and treatment in employment. Thus, when an employer intentionally fails to promote a black person, and/or intentionally constructively discharges a black person because of that person's race, the law has been violated and the black person may file suit and recover his damages.
 
 INSTRUCTION NO. 12
 
 30
 The plaintiff's civil rights claim against defendants in this case has the following essential elements:
 
 
 31
 FIRST: That a defendant or defendants in question discriminated against plaintiff with respect to one or more of the allegations by plaintiff;
 
 
 32
 SECOND: That the actions that discriminate against plaintiff were taken because of plaintiff's race; and,
 
 
 33
 THIRD: That as a direct result of such discrimination, plaintiff sustained damages.
 
 
 34
 Plaintiff has the burden of proving each of these essential elements by a preponderance of the evidence. If you find that each of these elements is so established, then you will return a verdict in favor of the plaintiff. If you find that any of these elements has not been so established then you will find for the defendant.
 
 
 35
 In our view these instructions do not cure the defect in the instruction defining constructive discharge. On the contrary, Instruction Number 11 may compound the error. First the jury was told that an unlawful failure to promote and/or a constructive discharge violates the Civil Rights Act. Then the jury was told that a violation of the Civil Rights Act constitutes a constructive discharge. It is not unlikely that the jury would then conclude that if it found an unlawful failure to promote it should also find a constructive discharge.
 
 
 36
 Consequently, we must remand with instructions that the jury verdict as to constructive discharge be vacated and a new trial had upon that claim. It follows from our holding that the award of punitive damages and attorney fees must also be vacated inasmuch as those awards cannot logically be segregated from the constructive discharge claim and attributed solely to the finding of an unlawful failure to promote which is left intact.
 
 
 37
 Further, in light of our holding we do not deem it necessary to reach the issue raising the prejudicial effect of evidence concerning the allegedly racially discriminatory atmosphere in Dubuque, Iowa. Nor do we deem it necessary at this point to reach the issue raised by the cross-appeal concerning reinstatement, injunctive and other equitable relief inasmuch as Irving may only be entitled to this relief, if he is entitled to it at all, upon a finding of constructive discharge.
 
 
 38
 Affirmed in part, reversed in part and remanded for new trial in accordance with the views expressed herein.
 
 
 
 [1]
 While it appears that a discussion concerning instructions and specific objections thereto was had off the record, a general objection to this particular sentence does appear on the record subsequently made. (R., Vol. 6, p. 508)