Ruby EBERT, Carla K. Ebert, Esther C. Ebert, Tempa Roselind Ebert, Willa Dean Atkinson, and Ila K. Brown, Plaintiffs,

v.

LAMAR TRUCK PLAZA, Defendant.

Civ. A. No. 85–F–2518.

United States District Court,
D. Colorado.

Jan. 16, 1987.

Penfield W. Tate, II, Denver, Colo., for plaintiffs.

John Gehlhausen, Lamar, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

SHERMAN G. FINESILVER, Chief Judge.

THIS MATTER is before the Court on plaintiffs' claims under Title VII of the Civil Rights Act of 1964, as amended, at 42 U.S.C. § 2000e et seq., and the Equal Pay Act, at 29 U.S.C. § 206(d). Jurisdiction exists pursuant to 28 U.S.C. § 1331. This Memorandum Opinion and Order constitutes our findings of fact and conclusions of law, following trial to the court. Rule 52(a), Fed.R.Civ.P. We find for the defendant Lamar Truck Plaza on all claims, and direct entry of judgment accordingly.

### I. Factual Background

This action arises out of the plaintiffs' employment at the Lamar Truck Plaza (LTP), a 24 hour full service restaurant in Lamar, Colorado. The players include plaintiffs, who were female employees at LTP, and persons who were either plaintiffs' superiors or managers during the time period relevant to plaintiffs' claims. Mr. Gene Taylor was a shift supervisor during most of the relevant time period; Mr. Charles Purdy was an assistant manager; Mr. Wes Caudillo was a prep cook; Mr. Ron Woolert was Chief Executive Officer of LTP, Inc. and general manager of LTP; Ms. Susan Woolert had no formal position with LTP during 1984 and 1985, but assisted in management duties; and

Mr. Jim Dixon was the LTP restaurant manager.

LTP management hired plaintiffs in May of 1984. The restaurant was beginning operations at that time. Plaintiffs were hired in various capacities—as baker, line cook, or dishwasher—depending on management needs and employee experience. Each of the plaintiffs either resigned or was terminated by late November 1985. Plaintiff Willa Dean Atkinson was rehired several days after her termination, and is currently employed as a prep cook at LTP.

Plaintiffs claim that during the period from approximately June of 1984 through May of 1985, the LTP working environment was permeated with sexual hostility. They also claim that defendant discriminated against them on the basis of their sex, by paying them lower wages than similarly situated males. Defendant denies that plaintiffs were harassed because of their sex or that working conditions were altered by the allegedly hostile atmosphere, and claims that wage differences were based on factors other than sex.

II. Plaintiffs' sexual harassment claims

■ Plaintiffs claim that LTP management engaged in conduct and commentary which created an offensive and hostile working environment. The Supreme Court has held that conduct of a sexual nature which creates such an environment is actionable. *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). To establish a prima facie case of sexual harassment, plaintiffs must show that: (1) they are members of a class of persons protected under the statute, (2) they were subjected to unwelcomed conduct in the workplace, (3) the unwelcomed conduct was based on sex, (4) the sexual nature of the work environment was so

pervasive as to alter working conditions and create an abusive working environment, and (5) the employer knew or should have known of the abusive conduct. *Meritor Savings Bank, supra.* Plaintiffs have failed to sustain their burden.

■ Plaintiffs claim that use of vulgar language and various instances of touching created the abusive environment. Each plaintiff testified that LTP employees, specifically Gene Taylor, Charles Purdy and Wes Caudillo used vulgar language consistently. Each remembered several specific instances which they considered offensive.[1] Plaintiffs also testified that Mr. Taylor and Mr. Purdy each gestured offensively at least one time in the presence of female employees, and touched various female employees on the breasts or buttocks. Ruby Ebert claims that she was terminated as a result of her complaints about the sexually hostile atmosphere. Tempe, Esther and Carla Ebert and Ila Brown, claim that the atmosphere effected their constructive discharge.[2] We find that plaintiffs have failed to establish that the alleged harassment was based on their sex, and have failed to show that the environment at LTP was the kind of pervasively hostile environment which is actionable under Title VII, as interpreted by the Supreme Court in *Meritor Savings Bank.*

■ In *Meritor Savings Bank,* the Supreme Court cited with approval the EEOC guidelines which state "that the trier of fact must determine the existence of sexual harassment in light of 'the record as a whole' and 'the totality of circumstances, such as the nature of the sexual advances and the context in which the alleged incidents occurred.' " 477 U.S. at 69, 106 S.Ct. at 2406, *quoting,* 29 C.F.R. § 1604.11(b). On the record as a whole, plaintiffs have failed to show that the alleged harassment

---

**1.** Plaintiffs' deposition testimony contradicts some trial testimony about the use of foul language at LTP. For purposes of analyzing the sexual harassment claim, we assume that all incidents reported at trial actually occurred.

**2.** Plaintiffs presented no evidence of recoverable damages other than those resulting from their termination or alleged constructive dis-

charge. While Willa Dean Atkinson was terminated in November, 1985, she was reinstated with full back pay several days thereafter. As such, it appears that Ms. Atkinson makes no claim for damages based on the allegedly hostile environment at LTP. However, even if she were to make such a claim, it would fail with the other plaintiffs'.

was based on their sex. Defendants presented evidence that vulgar language was used by a number of LTP employees—including some of the plaintiffs—not just by Mr. Purdy and Mr. Taylor. The testimony of Kathy Leffingwell, a waitress at LTP during the time period at issue here, indicated that plaintiff Ruby Ebert's language was as offensive as that of the male kitchen employees she heard. The evidence showed that such language was directed indiscriminately at both male and female coworkers. Several witnesses testified that the language used was typical of that used in the restaurant business. Congress did not intend for Title VII to obliterate the use of foul language in the American workplace.

> ... it cannot be seriously disputed that in some work environments the language is rough hewn and vulgar.... Title VII was not meant to—or can [sic]—change this. It must never be forgotten that Title VII is the Federal Court mainstay in the struggle for equal employment opportunity for female workers of America. But it is quite different to claim that Title VII was designed to bring about a magical transformation in the social mores of American workers.

*Rabidue v. Osceola Refining Co.*, 584 F.Supp. 419, 430 (E.D.Mich.1984), *aff'd*, 805 F.2d 611 (6th Cir.1986).

Additionally, plaintiffs have not established that the alleged harassment was so pervasive as to alter working conditions and create an abusive working environment. The specific instances of use of foul language and alleged unwelcomed touching reported by the witnesses at trial were actually sparse. For example, Carla Ebert testified that she was touched two times in what she felt was an abusive manner, although her tenure at LTP ran from May of 1984 until August of 1985. The Court's record of trial indicates that she testified to an additional four incidents of unwelcomed touching or sexually oriented actions involving other employees during her 15 months at LTP. Kathy Leffingwell's testimony confirmed that any unwelcomed touching incidents were few and far between; indeed, Ms. Leffingwell stated that she never saw any sexually oriented contact initiated by Mr. Taylor or Mr. Purdy.

We find that the paucity of plaintiffs' complaints to management belie the severity of the problem they assert existed at LTP. Testimony was undisputed that many allegedly offensive incidents went unreported by the victims. We are persuaded by the testimony of Mr. Dixon, as part of LTP management, that he and other LTP managers responded properly and promptly to all reported incidents. Ruby Ebert testified that when she complained to Mr. Dixon, he spoke to the offending party in a timely manner. And again, Ms. Leffingwell's testimony bolsters defendant's argument. She stated that the one time that Mr. Dixon heard her use a vulgar expression, he promptly took her into his office and reprimanded her. In our view, the defendant dealt expeditiously and efficiently with a difficult and admittedly sometimes uncomfortable working environment.

■ Based on the above facts elicited at trial, we are not convinced that the "conduct [of LTP management] ha[d] the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." 29 C.F.R. § 1604.11(a). "For sexual harassment to state a claim under Title VII, it must be sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment." *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir.1982). Plaintiffs simply have not demonstrated the existence of a pervasive, sexually hostile atmosphere. They have not shown that LTP management created or condoned an environment which significantly and adversely affected employees because of their sex. They have not established a pattern of sexual harassment inflicted on employees. In sum, plaintiffs have not established that the conduct complained of occurred because of their sex, and have not shown that the alleged harassment affected the working environ-

ment significantly.[3]

### III. Plaintiffs' claims under the Equal Pay Act

Plaintiffs claim that defendant discriminated against them on the basis of their sex, by paying them lesser wages than similarly situated male employees. Title VII provides that it is unlawful for an employer to "discriminate against any individual with respect to compensation ..." because of their sex. 42 U.S.C. § 2000e–2(a) (1982). The Equal Pay Act provides:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex....

29 U.S.C. § 206(d)(1).

■ · The Equal Pay Act provisions constitute a specific application of the three-pronged disparate treatment analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In such cases, the plaintiff carries the initial burden of establishing a prima facie case of discrimination. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas, supra.* Plaintiffs must therefore show that they received unequal pay vis-a-vis male employees for jobs performed under similar working conditions requiring equal skill, effort and responsibility. *Pearce v. Wichita County, City of Wichita Falls, Texas Hospital Board*, 590 F.2d 128 (5th Cir.1979); *Wheeler v. Armco Steel Corp*, 471 F.Supp. 1050 (S.D.Tex.1979). The rationale for requiring plaintiffs to carry this initial burden is to eliminate facially valid reasons for certain employment actions, and to require plaintiffs to come forward with evidence which establishes an inference of discrimination. *Hickman v. Flood & Peterson Insurance, Inc.*, 766 F.2d 422, 424 (10th Cir.1985); *Carlile v. South Routt School Dist RE–3J*, 739 F.2d 1496, 1499 (10th Cir.1984).

If plaintiffs establish a prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its actions. *Board of Trustees v. Sweeney*, 439 U.S. 24, 25 n. 2, 99 S.Ct. 295, 296 n. 2, 58 L.Ed.2d 216 (1978). The nondiscriminatory reasons listed in 29 U.S. C. § 206(d)(1) are explicitly applicable to unequal pay claims. If defendant meets this burden of production, plaintiff must then prove that the rationale presented by the employer is a pretext to mask discriminatory intent. The burden to prove pretext is a heavy one. *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825; *Carino v. University of Oklahoma Board of Regents*, 750 F.2d 815, 819 (10th Cir.1984).

In this case, only certain plaintiffs have established a prima facie case. Plaintiff Tempa Ebert was hired as a dishwasher, and made no showing at trial that she was required to perform duties different than

---

**3.** Inasmuch as plaintiffs Tempa, Esther and Carla Ebert and Ila Brown assert distinct claims for constructive discharge, those claims must fail. In this Circuit "a constructive discharge occurs when an employer deliberately makes or allows the employee's working conditions to become so intolerable that the employee has no other choice but to quit." *Irving v. Dubuque Packing Co.*, 689 F.2d 170, 172 (10th Cir.1982). To be actionable, the employer's conduct must be motivated by an impermissible animus, and the employer must intend to force resignation. *Id.* The situation at LTP does not meet the *Irving* standard. While we do not intend to indicate that a claim for constructive discharge must always fail when a related claim for sexual harassment fails, *see Ramsey v. City and County of Denver*, Action No. 86–F–64, slip. op. at 16 (D.Colo. Dec. 1, 1986), we are persuaded on the constructive discharge claim by much of the same evidence that supports our disposition of the sexual harassment claim.

those required of other dishwashers.[4] The undisputed evidence at trial showed that all LTP dishwashers were paid an equal amount. As such, plaintiff Tempa Ebert's Equal Pay Act claim fails.

■ The remainder of the plaintiffs have proven a prima facie case. Plaintiff Carla Ebert served as a line cook at a maximum salary of $4.50 per hour, and plaintiff Willa Dean Atkinson still serves as a line cook at a salary of $4.75 per hour; a male, Art Patschek, served in the same capacity at $5.00 per hour. Plaintiff Ruby Ebert served as a baker at a maximum salary of $4.00 per hour; two males, Kevin Hays and Richard Haynes, served in the same capacity at $5.00 per hour.[5] Plaintiff Ila Brown served as a prep cook at a salary of $4.00 per hour, and plaintiff Esther Ebert served as a prep cook during part of her tenure at LTP at a salary of $3.50 per hour; Wes Cauldillo and Gene Taylor served in that same capacity at $4.50 and $5.00 per hour, respectively. *See* plaintiffs' exhibits 1 and 2.[6] As to all defendants other than Tempa Ebert, then, defendants must articulate a nondiscriminatory reason for their actions. We find that they have done so.

■ Experience is a "factor other than sex" within the meaning of 29 U.S.C. § 206(d)(1). *Handy v. New Orleans Hilton Hotel,* 532 F.Supp. 68 (E.D.La.1982); *Higdon v. Evergreen Airlines, Inc.,* 138 Ariz. 163, 673 P.2d 907 (1983), *vacated on other grounds,* 149 Ariz. 452, 719 P.2d 1068 (1986). Experience with the employer at issue is a particularly strong, legitimate reason for differing pay scales. *See Clymore v. Far-Mar-Co., Inc.,* 709 F.2d 499 (8th Cir.), *on remand,* 576 F.Supp. 1161

(W.D.Mo.1983). Mr. Dixon, a highly credible witness, testified that a number of LTP employees were awarded higher salaries than others based on the recommendation of other supervisory employees, previous experience working with LTP management, or prior similar experience as listed on applications.[7] At the time the original pay scales were set, LTP management needed to hire a fair number of employees in a short period of time to help with start up operations. Legitimate and immediate business needs therefore dictated a number of hiring decisions. In sum, LTP management used acceptable business reasons in making hiring decisions and in setting the salaries necessary to acquire the employees needed to begin operations. *See Kouba v. Allstate Ins. Co.,* 691 F.2d 873 (9th Cir. 1982). Plaintiffs have failed to rebut defendant's explanations. We find no pretext in the business reasons advanced by defendant for its salary schedule. As such, plaintiffs' claims for disparate treatment must fail.

## IV. Conclusion

ACCORDINGLY, the Clerk of the Court is DIRECTED to enter judgment in favor of defendant and against plaintiff on the Complaint in this matter. All parties shall pay their own costs and attorney fees.

This Order constitutes our findings of fact and conclusions of law as required by Rule 52(a), Fed.R.Civ.P.

---

4. At most, she established that she undertook duties with *less* responsibility than general dishwashing duties.

5. Ruby Ebert arguably served as a prep cook during the last three weeks of her tenure, even though her formal job designation remained the same. As such, her claim may be analyzed with Ila Brown and Esther Ebert's claims.

6. Defendants made no effort to distinguish the duties performed by the various employees by requisite skill, effort and responsibility. We therefore assume that those who were assigned a particular job classification all performed at the same level of responsibility.

7. We note in passing that the management had a right to rely on the representations in the written applications submitted by the employees, as well as on verbal representations made in interviews. Management received over 300 applications in a short period of time during start-up operations at LTP; management could not reasonably be expected to verify all references. Immediate business judgments as to pay and job classifications had to be made. We find no unfairness or impropriety in these judgments.