**Jan THOMPSON, Plaintiff,**

v.

**The CITY OF ALBUQUERQUE, a municipal corporation, Defendant.**

**No. CV 95–1474 SC/LFG.**

United States District Court, D. New Mexico.

Oct. 22, 1996.

William J. Tryon, Albuquerque, NM, for Plaintiff.

Robert M. White, City Attorney, and Victor E. Valdez, Asst. City Attorney, Albuquerque, NM, for Defendant.

## MEMORANDUM OPINION AND ORDER

CAMPOS, Senior District Judge.

THIS MATTER is before the Court on Defendant's Motion for Summary Judgment, filed September 13, 1996 (Doc. No. 22). For the reasons contained in this opinion, the motion will be GRANTED.

In her Complaint, Plaintiff, Jan Thompson, alleges that Defendant, City of Albuquerque, violated Title VII (42 U.S.C. § 2000e *et seq.*) and the Fair Labor Standards Act incorporating the Equal Pay Act of 1973 (29 U.S.C. § 206 *et seq.*) by paying her less than two male Doctors of Veterinary Medicine it employs.[1] Plaintiff filed her Complaint in state court; Defendant removed the case to federal court and now moves for summary judgment.

Summary judgment is appropriately granted when the court, viewing the record in the light most favorable to the non-moving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Thrasher v. B & B Chemical Co.*, 2 F.3d 995, 996 (10th Cir.1993) (*quoting Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir. 1991)). The party moving for summary judgment bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887,

---

1. Although there is an allegation of retaliation in ¶ 19 of the Complaint, there is no mention of a retaliation claim in the Pre–Trial Order or in any of the summary judgment pleadings. Therefore, I deem this claim waived.

891 (10th Cir.1991) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986)). Once the movant meets this burden, the opposing party must provide the court with specific facts showing a genuine dispute for trial. Fed. R.Civ.P. 56(e); *Gray v. Udevitz*, 656 F.2d 588, 592 (10th Cir.1981). A dispute about a material fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ingels v. Thiokol Corp.*, 42 F.3d 616, 620 (10th Cir.1994) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).

The undisputed facts in this case establish that Plaintiff is a female employee of the City of Albuquerque, Animal Services Division (formerly called "Animal Control"), which is part of the Environmental Health Department. She was hired as a licensed Doctor of Veterinary Medicine in March 1985. Two male Doctors of Veterinary Medicine, Dr. S. Bret Snyder and Dr. Michael Richard, work at the city's Rio Grande Zoo and earn a substantially higher hourly wage than Plaintiff. The zoo is part of the city's Cultural and Recreational Services Department.

Plaintiff earned her D.V.M. degree and license to practice veterinarian medicine in 1979. She worked as a vet in various small animal practices from 1979 to 1985. She received a Distinguished Service Award from the New Mexico Veterinary Medical Association in the mid–1980s. At least 95% of her practice is and has been limited to treatment of dogs and cats. She teaches animal care, evaluation, treatment of injuries and sickness, zoonotic diseases, and euthanasia to the Animal Services staff. She has never worked as a zoo veterinarian. She has not published any papers in the field of veterinary medicine.

Dr. S. Bret Snyder earned his D.V.M. degree in 1964. He then earned an M.S. in medical microbiology in 1971. He worked in various small veterinary practices between 1964 and 1968, and completed a post-doctoral fellowship in laboratory animal/comparative medicine. He worked as a clinical veterinarian in the School of Medicine for the University of New Mexico between August 1973 and 1978. He had two years of part-time experience with the San Francisco Zoological Park providing pathology and microbiology support and performing necropsies on all zoo animal mortalities. He was a contract vet for the Rio Grande Zoo in 1977–78 prior to becoming employed there full time in November 1978. Dr. Snyder has been involved in several research projects and has published over 20 articles in the scientific literature of veterinary medicine.

Dr. Michael Richard earned his D.V.M. degree in 1980. He has an undergraduate degree in zoology from Colorado State University, where during his senior year he spent four months in a preceptorship at the Denver Zoo. He worked as a staff vet for the Hobbs Animal Hospital between 1980 and 1982, worked as the director of the Manzano Animal Clinic Urgent Care Center between 1982 and 1986, and has worked as the consulting vet to the Lovelace Medical Foundation from 1982 through the present. He was hired to work half time as a vet at the Rio Grande Zoo in 1989. Before that, he had worked as a contract vet at the zoo since 1982 to provide consulting and backup relief for Dr. Snyder. Additionally, Dr. Richard worked half time as the vet for the University of New Mexico from 1986 to July 1, 1996 where he was responsible for 75–80 primates, numerous venomous and non-venomous reptiles, exotic animals and native wildlife. He has co-authored a few scientific articles.

Most of the animals at the Animal Services Division are dogs and cats. The animals stay at the facility for short periods until they are recovered by their owners, adopted, or euthanized. No major surgery is performed there. Dr. Thompson does not supervise any staff, although she does provide staff training. The veterinary medical equipment at the Animal Services Division is quite limited, in contrast to a long list of complex equipment available for use at the zoo. Dr. Thompson keeps medical records for some but not all the animals that come to the facility. She occasionally but not routinely performs a post-mortem exam on an animal that dies there.

### Equal Pay Act

■ The Equal Pay Act is contained in the Fair Labor Standards Act, and provides in pertinent part:

No employer ... shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishments at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work in jobs the performance of which requires equal skill, effort, and responsibility and which are performed under similar working conditions, except where such payment is made pursuant to ... (iv) a differential based on any other factor other than sex. . . .

29 U.S.C. § 206(d). In an Equal Pay Act case, the initial burden is on the plaintiff to show that the work was substantially equal considering the skills, duties, supervision, effort, and responsibilities of the jobs, that the work conditions were basically the same, and that the male employees were paid more. *Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974); *Tidwell v. Ft. Howard Corp.,* 989 F.2d 406, 409 (10th Cir.1993); *Kenworthy v. Conoco, Inc.,* 979 F.2d 1462, 1467 (10th Cir. 1992). The Act also provides what has been referred to as a "geographic limitation" that the employees being compared must work in the "same establishment." *Mulhall v. Advance Security, Inc.,* 19 F.3d 586, 590 (11th Cir.1994). If the plaintiff establishes her prima facie case, the defendant has the burden of persuading the fact finder that there were acceptable reasons that justified the wage disparity. *Tidwell,* 989 F.2d at 409.

It is undisputed that the male zoo vets are paid more than Plaintiff. Therefore I turn to an analysis of the two disputed factors in Plaintiff's prima facie case.

■ **Same Establishment.** Defendant argues first that Plaintiff cannot show that she and the zoo vets work in the same "establishment." It is undisputed that they all work for the city, but they work in different physical locations. Plaintiff works at what used to be called Animal Control where stray domestic animals are brought; the male vets work at the Rio Grande Zoo. It is also undisputed that they work for different city departments, Plaintiff in the Environmental Health Department and the zoo vets in the Cultural and Recreational Services Department. The department directors and managers are different, their department files are kept separately, and their salaries are administered through different departmental budgets.

Courts have analyzed the establishment element by using a functional test rather than just looking at geographical location; they look at whether there existed centralized control and administration of disparate job sites. *Mulhall,* 19 F.3d at 590; *Brownlee v. Gay and Taylor, Inc.,* 642 F.Supp 347, 351–52 (D.Kan.1985), *aff'd,* 861 F.2d 1222 (10th Cir.1988). "The hallmarks of this standard are centralized control of job descriptions, salary administration, and job assignments or functions." *Mulhall,* 19 F.3d at 591; *Brownlee,* 642 F.Supp. at 352. In the public employer context, there has been a tendency to look at the "establishment" test broadly. *See, e.g., AFSCME v. County of Nassau,* 609 F.Supp. 695, 705–07 (E.D.N.Y. 1985) (possibility that plaintiff could prove that entire Nassau County constitutes a single establishment under EPA); *Grumbine v. United States,* 586 F.Supp. 1144, 1146–49 (D.D.C.1984) (entire federal civil service is a single establishment).

Defendant has met its initial burden on summary judgment of coming forward with sufficient evidence of functional differences between the job sites at Animal Services and the Rio Grande Zoo to support a finding that the two jobs were not part of the same establishment. Plaintiff has failed to respond to this argument in her terse brief. She has failed, therefore, to provide me with specific facts showing a genuine factual dispute for trial on the issue of whether Plaintiff and the zoo vets work for the same establishment. Thus she has failed to make out this element of her prima facie case under the EPA.

■ **Substantially Equal Work.** If the jobs being compared are substantially equal, they need not be identical. *E.E.O.C.*

*v. Central Kansas Medical Center,* 705 F.2d 1270, 1272 (10th Cir.1983). An employer may not escape liability under the EPA "by drawing overly fine distinctions in the tasks at issue." *Id.* In determining whether the employees being compared have jobs of substantial equality, the court must make "a practical judgment on the basis of all the facts and circumstances of a particular case. Skill includes such considerations as experience, training, education, and ability." *Id.,* 705 F.2d at 1272 (*citing EEOC v. Universal Underwriters Ins. Co.,* 653 F.2d 1243, 1245 (8th Cir.1981)). "Effort refers to the physical or mental exertion necessary to the performance of a job." *Id.,* 705 F.2d at 1272. "Responsibility concerns the degree of accountability required in performing a job." *Id.* Substantial equality is not a factor of job titles or classifications but rather of actual requirements and performance of the job. *Id.* at 1272–73.

It is undisputed that Plaintiff and the zoo vets are all licensed veterinarians, and that they all have the same city job code (# 023). However, as discussed above, they have different experience and training, which is relevant in that Plaintiff's experience and training do not include any zoo work. Their job duties and responsibilities are vastly different, in that Plaintiff is responsible principally for the short-term health of domestic dogs and cats, whereas the two zoo vets are responsible for the continued long-term health of a wide variety of exotic animals, some of which are endangered and extremely valuable. Plaintiff is not a supervisor of any staff, is not responsible for keeping records on each animal, and does not work with nearly as much or as complex equipment.

Plaintiff asserts that only her job assignments and those of the zoo vets are different, but that their functions are essentially the same, i.e. the treatment and care of a variety of animals. She points out that she once was called out when a Bengal tiger was roaming in a city parking lot, and that she has been called when bears come down from the Sandia mountains and need to be captured. This limited experience with a tiger and some bears does not compare with the extensive experience of the zoo vets in dealing with such animals on a daily basis.[2]

Additionally, Plaintiff offers the opinion of her expert witness, Dr. Alice De Groot, D.V.M., that:

> The Animal Services veterinarian and the Rio Grande Zoo veterinarian(s) perform essentially the same job duties and responsibilities. They are both responsible for the health, care and handling of a large group of animals confined to specific enclosures (kennels, exhibit areas).... Essentially the same veterinary skills are required for the performance of their duties, including: a) physical examination, b) diagnosis of injury/sickness, c) prognosis, d) treatment as necessary—prescribing/administering medication, performing surgery, e) disease prevention—vaccinations, supervision of enclosure cleaning and sanitation, f) tranquilization, g) proper nutrition for healthy and sick/injured animals, h) euthanasia supervision/administration, and i) medical records.... In my professional opinion, the veterinary skills, effort, and responsibility required in the performance of duties by the City of Albuquerque Animal Services staff veterinarian and the City of Albuquerque Rio Grande Zoo staff veterinarian(s) are substantially equal.

Dr. De Groot memo, Pl. Ex. F. Finally, Plaintiff asserts that while specific duties vary, the veterinarians working for the city all have the same professional education (D.V.M. degree) and perform substantially the same function.

It does not suffice to show that all three employees have the same academic degree, the same job code, and responsibility for the health of a large group of animals. Dr. De

---

**2.** In her deposition Plaintiff testified that she has examined only one bear in connection with a highly publicized incident some years ago in Albuquerque. A bear came down from the mountain and climbed a utility pole within the city limits. Game and Fish staff tranquilized the bear, causing it to fall off the pole onto a live electrical wire, resulting in burns to the bear's hind legs. The bear was taken to Animal Control where Dr. Thompson examined it. The bear was then transported to the zoo where it was left to recover for several months in the care of the zoo vets.

Groot's conclusory opinion notwithstanding,[3] I find that the zoo vets' training and experience are more varied and that their responsibilities are more weighty than Plaintiff's. They deal with larger, more dangerous animals on a daily basis, they deal with a wider variety of animals, and they perform major and minor surgery on a regular basis. Plaintiff performs only minor surgery. The zoo vets are called upon regularly to exercise more skill in areas where Plaintiff does not share an equivalent level of expertise. Plaintiff has not shown that these differences are "overly fine distinctions." She has failed to meet her prima facie burden to show that the skill, effort and responsibility of the two positions are substantially equal.

Because Plaintiff has failed to meet her prima facie burden on two elements of her case, summary judgment will be granted to Defendant on the Equal Pay Act claim.

### Title VII—Sex Discrimination

Defendant also seeks summary judgment on Plaintiff's Title VII claim. It cites *Ebert v. Lamar Truck Plaza*, 715 F.Supp. 1496, 1500 (D.Colo.1987), *aff'd* 878 F.2d 338 (10th Cir.1989) for the proposition that on her Title VII claim, the plaintiff has the initial burden of establishing, as a prima facie case, that she received unequal pay vis-a-vis the zoo vets for a job performed under similar working conditions *requiring equal skill, effort and responsibility*. This is no longer the Tenth Circuit standard for a prima facie case in a sex-based wage discrimination claim under Title VII. In *Tidwell v. Ft. Howard Corp.*, 989 F.2d 406 (10th Cir.1993), the Tenth Circuit Court of Appeals interpreted *Washington County v. Gunther*, 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981), and ruled that in a sex-based wage discrimination claim under Title VII, a showing of "equal work" is not required, whereas in a

claim under the EPA, such a showing is required. *Tidwell*, 989 F.2d at 410–11.

On one hand the coverage of Title VII is broader than that of the EPA. *Maxwell v. City of Tucson*, 803 F.2d 444, 446 n. 5 (9th Cir.1986) (plaintiff in sex-based wage discrimination suit who cannot satisfy "single establishment" requirement of EPA may state claim under Title VII); *Baumgardner v. ROA General, Inc.*, 864 F.Supp. 1107, 1110–11 (D.Utah 1994) (Title VII embraces a more relaxed standard of similarity between male and female-occupied jobs). On the other hand, because of differences in burdens of proof, a plaintiff may prevail on a wage parity claim under the EPA and lose on the same claim under Title VII. *Tidwell v. Ft. Howard Corp., supra* (plaintiff who prevailed in EPA case lost under Title VII because she failed to prove defendant intentionally discriminated in wages on basis of sex); *Peters v. City of Shreveport*, 818 F.2d 1148, 1153–55 & n. 3 (5th Cir.1987) (burden of persuasion that wage differential was due to defendant's intentional sex discrimination remains with plaintiff as to Title VII claim, although burden under EPA shifts to defendant if plaintiff meets prima facie burden).

Under Title VII a plaintiff may establish a prima facie case of sex discrimination by demonstrating that she is female and that the job she occupied was similar to higher paying jobs occupied by males. *Baumgardner*, 864 F.Supp. at 1111. Once the plaintiff establishes a prima facie case, the defendant must then produce some evidence of, or must at least articulate, a non-discriminatory reason for the pay disparity. *Tidwell*, 989 F.2d at 409. If the defendant so justifies its practice, the plaintiff must establish, by a preponderance of the evidence, that the defendant intentionally discriminated against the plaintiff. *Id.* At the summary judgment stage, the plaintiff may meet this

---

**3.** Dr. De Groot's memo to Plaintiff's counsel, Pl. Ex. F, states that she has evaluated and treated zoo animals, but her resume discloses that she, like Plaintiff, has never worked in a zoo. Her only basis for comparing Plaintiff's job with that of the zoo vets is a visit to the Rio Grande Zoo in July 1996 as an ordinary visitor, and "having been in the Rio Grande Zoo clinic with Dr. Brett Snyder on two earlier occasions." *Id.* Her opinion is contained in an unsworn report, she

does not purport to have considered all the relevant facts that have been brought out in the summary judgment motion, her report is not based on personal knowledge of the zoo jobs, and it is generalized and conclusory. Although I have considered the report, it is insufficient to raise a genuine issue of material fact because of these defects. *See Stevens v. Barnard*, 512 F.2d 876, 879 (10th Cir.1975); *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir.1991).

burden with some evidence that the proffered nondiscriminatory reason is pretextual, from which a jury may infer discriminatory intent. *Reynolds v. School District No. 1, Denver, Colorado,* 69 F.3d 1523, 1533 (10th Cir.1995). "[E]vidence of pretext (plus a prima facie case) is enough to avoid summary judgment for the defendant without requiring the plaintiff to present direct evidence of an illegal discriminatory motive." *Id.* at 1534. On summary judgment, proof of pretext requires some showing by plaintiff that the tendered reason for the employment decision was not the genuine motivating reason, but rather was a disingenuous or sham reason; the plaintiff need not present direct evidence of illegal discriminatory motive. *Id.* at 1535.

 In this case, under the relaxed Title VII analysis, Plaintiff has presented a prima facie case of sex-based wage discrimination. She is in a protected class, female, and she is paid less than males in "similar" positions. Defendant has come forward with legitimate nondiscriminatory reasons for paying Plaintiff less than the male zoo vets, e.g. the zoo jobs are more complex and require more specialized training and experience. Plaintiff has failed to carry her burden of showing pretext. In fact, Plaintiff has utterly failed to address her Title VII claim in her response brief. Thus, I shall grant the motion for summary judgment on the Title VII claim.

NOW THEREFORE IT IS ORDERED that Defendant's Motion for Summary Judgment should be and is hereby GRANTED.

### SUMMARY JUDGMENT

The Court, having granted Defendant's Motion for Summary Judgment, hereby enters a summary judgment in favor of Defendant, The City of Albuquerque, and against Plaintiff, Jan Thompson, on all claims in the Complaint.