Freda **BRADLEY**, Plaintiff,

v.

**NATIONAL RAILROAD PASSENGER CORPORATION ("AMTRAK"),**
**Defendant.**

**No. 90 Civ. 6990 (SWK).**

United States District Court,
S.D. New York.

July 6, 1992.

Joel Myron, Jersey City, N.J., for plaintiff.

Siff, Rosen & Parker, P.C. by Kathleen J. Raynsford, Mark S. Landman, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

In this civil rights action involving four claims of employment discrimination under 42 U.S.C. § 1981, four claims of employment discrimination under New York Human Rights Law Section 296, and two state tort claims, defendant National Railroad Passenger Corporation ("Amtrak") moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an order granting it summary judgment. Plaintiff Freda Bradley ("Bradley") opposes the motion. For the reasons set forth below, Amtrak's motion is granted in part and denied in part.

1. These facts are adopted in part from the parties' statements of facts provided pursuant to Local Civil Rule 3(g), the parties' affidavits, and the exhibits attached thereto.

## Background [1]

Bradley, a black woman, has been employed by Amtrak since November 1, 1976. Her first position with Amtrak was as a clerk/stenographer in the New York Pennsylvania Station office. In 1978, she moved to her current position as Chief Clerk in the Engineering Department. Bradley's educational background includes a high school diploma and some college credits.

During her tenure at Amtrak, Bradley applied for eight other available positions. In each instance Amtrak hired another individual. Specifically, Bradley applied for the following positions on the following dates:

(1) Administrator, Small Business Development Office—March 23, 1987;

(2) Supervisor, Maintenance of Way Labor Relations—May 4, 1987;

(3) Division Administrator, Operations and Maintenance—June 30, 1988;

(4) Head Clerk, Passenger Services—August 29, 1988; [2]

(5) Head Clerk, Passenger Services ("Head Clerk")—September 16, 1988;

(6) Assistant to Vice–President–Engineering ("Assistant to V.P.")—December 19, 1988;

(7) Senior Administrator–Track ("Senior Administrator")—January 1, 1989;

(8) Division Administrator, Operations and Maintenance ("Division Administrator")—August 16, 1989.

With respect to the latter four positions, Bradley claims that by failing to hire her, Amtrak discriminated against her based on race, in violation of both 42 U.S.C. § 1981 and New York Human Rights Law Section 296. Specifically, Bradley alleges that she was qualified for all four positions, but Amtrak awarded the positions to white employees who were equally or less qualified than she. Bradley also alleges that Amtrak's actions subject it to liability for intentional infliction of emotional distress ("IIED") and prima facie tort.

2. Although Bradley was not hired for the first four listed positions, her employment discrimination claims are not based on these denials.

## I. Standard for Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, a motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party must initially satisfy a burden of demonstrating the absence of a genuine issue of material fact, which can be done merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The nonmoving party then must meet a burden of coming forward with "specific facts showing that there is a genuine issue for trial," Fed. R.Civ.P. 56(e), by "a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. at 322, 106 S.Ct. at 2552.

The court "must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion." *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–159, 90 S.Ct. 1598, 1608–1609, 26 L.Ed.2d 142 (1970); *Hathaway v. Coughlin*, 841 F.2d 48, 50 (2d Cir.1988); *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). But the court is to inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for the party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), and to grant summary judgment where the nonmoving's evidence is merely colorable, conclusory, speculative or not significantly probative. *Id.* at 249–50, 106 S.Ct. at 2510–11; *Knight v. U.S. Fire Insurance Co.*, 804 F.2d at 12, 15; *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir.1986), *cert. denied*, 479 U.S. 1088, 107 S.Ct. 1295, 94 L.Ed.2d 151 (1987). To determine whether the nonmoving party has met his or her burden, the court must focus on both the materiality and the genuineness of the factual issues raised by the nonmovant. As to materiality, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510. A dispute over irrelevant or unnecessary facts will not preclude summary judgment, *id.*, but the presence of unresolved factual issues that are material to the outcome of the litigation mandates a denial of the summary judgment motion. *See, e.g., Knight v. U.S. Fire Insurance Co.*, 804 F.2d at 11–12.

Once the nonmoving party has successfully met the burden of establishing the existence of a genuine dispute as to an issue of material fact, summary judgment must be denied unless the moving party comes forward with additional evidence sufficient to satisfy his or her ultimate burden under Rule 56. *See Celotex Corp. v. Catrett*, 477 U.S. at 330, n. 2, 106 S.Ct. at 2556, n. 2 (Brennan, J., dissenting). In sum, if the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1969)); *see also Weg v. Macchiarola*, 654 F.Supp. 1189, 1191–92 (S.D.N.Y.1987).

## II. The *Patterson* Test

In *Patterson v. Mclean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), the Supreme Court limited the scope of Section 1981 employment discrimination claims based on failure to promote an individual. Specifically, the Court held that "whether a promotion claim is actionable under § 1981 depends upon whether the nature of the change in position [is] such that it involves the opportunity to enter [a] new contract with the

**290**

employer." *Id.* at 185, 109 S.Ct. at 2377. The Court went on to say that "[o]nly where the promotion rises to the level of an opportunity for a *new and distinct relation* between the employee and the employer is such a claim actionable under § 1981." *Id.* (emphasis added). The Supreme Court directed the district courts to exercise discretion in determining whether a promotion constitutes a "new and distinct relation." *Id.* Thus, a threshold issue in this case is whether Bradley's claims relating to the four positions to which she was not promoted are actionable under *Patterson.* Amtrak contends that they are not actionable as even if Bradley were hired for any of these positions, no "new and distinct relation" would have been created between Bradley and Amtrak, as required by *Patterson.* The Court finds, however, that Bradley has satisfied the *Patterson* test with respect to three of the four positions for which she was denied promotion. Specifically, Bradley's claims based upon denial of promotion to the Assistant to V.P., Senior Administrator, and Division Administrator positions satisfy the requirement that the promotions establish a "new and distinct relation" between the employee and employer.

Most significantly, Amtrak concedes that these three positions, unlike Bradley's current Chief Clerk position, are management positions. *See* Defendant's Response to Interrogatory # 56. If Bradley had been hired for any of these three positions, she no longer would have been governed by the collective bargaining agreement, thus significantly altering the relationship between employee and employer. *See Williams v. Chase Manhattan Bank, N.A.,* 728 F.Supp. 1004 (S.D.N.Y.1990) (promotion from employee to bank officer creates a "new and

distinct relation" under *Patterson* ). Additionally, all three positions would have been accompanied by an increase in salary and responsibility, as well as a change in function. *See Mallory v. Booth Refrigeration Supply Co.,* 882 F.2d 908, 910 (4th Cir.1989) (promotion from a clerking position to supervisor satisfies *Patterson* since the promotion entails an increase in responsibility and salary);[3] *Green v. Kinney Shoe Corp.,* 728 F.Supp. 768 (D.D.C.1989) (promotion from salesman to manager constitutes a "new and distinct relation" as a result of the difference in responsibilities, higher salary, and improved possibility of future promotion); *Luna v. City and County of Denver,* 718 F.Supp. 854, 856–57 (D.Colo.1989) (promotion constitutes a "new and distinct relation" as a result of "substantial differences between the two positions in supervisory responsibility, duties performed, and required qualifications").[4]

Whereas Bradley's current duties as Chief Clerk, which pays approximately $28,000 per year, include preparing administrative reports, investigating grievances, and supervising two other clerks, the Assistant to V.P. position pays $37,922 per year, *see* Plaintiff's Exhibit ("P.E.") "14", includes the responsibility of overseeing administration policies, coordinating those policies with other Amtrak departments, overseeing budget variance, and managing the department's "manpower administration." *See* P.E. "11". The Senior Administrator is responsible for supervising twelve employees, organizing manpower and rosters, *see* P.E. "16", and receives a salary of $31,100 per year. *See* P.E. "19". Finally, the Division Administrator is responsible for certain administrative data flow, coordination of trials, investigations, and hear-

---

**3.** In *Bush v. Commonwealth Edison Co.,* 732 F.Supp. 895, 898 (N.D.Ill.1990), the court held that a promotion which included an accompanying increase in salary and change in function was not actionable under Section 1981. The Court finds this case to be an anomaly and respectfully disagrees with its interpretation of the *Patterson* requirements.

**4.** Defendant's reliance upon *Long v. AT & T Information Systems, Inc.,* 733 F.Supp. 188 (S.D.N.Y.1990) and *Williams v. National R.R.*

*Passenger Corp.,* 716 F.Supp. 49 (D.D.C.1989) is misplaced as these cases merely held that a change in salary alone is insufficient to establish a "new and distinct relation" under *Patterson.* Defendant's reliance upon *Sofferin v. American Airlines, Inc.,* 717 F.Supp. 597 (N.D.Ill. 1989) is also misplaced as the court in that·case held only that a change from nonprobationary to probationary status does not meet *Patterson's* "new and distinct relation" test.

ings related to union agreements, assignment and supervision of clerical forces, assignment and supervision of all administrative activities of the General Superintendent and Transportation Offices, *see* P.E. "20", and receives a salary of $35,200 per year. *See* P.E. "22". In sum, promotions to any of these three positions would have created a "new and distinct relation" between Bradley and Amtrak as they would have included a change in salary, function, responsibility, and management authority.

■ Bradley's claim based upon her Head Clerk application, however, does not survive the *Patterson* analysis.[5] Bradley claims that a move from Chief Clerk to Head Clerk would have created a "new and distinct relation" as the Head Clerk position includes a change in salary, increased contact with the public, and new status under the collective bargaining agreement. The Court disagrees, and finds that a "new and distinct relation" is not established by such minor changes. The increase in salary which accompanied the Head Clerk position was minimal, and, unlike a management position, as Head Clerk Bradley still would have been covered by the same collective bargaining agreement. Moreover, although the Head Clerk position engenders more contact with the public, this does not establish a significant change in the employee-employer relationship. Accordingly, since the Court finds that Bradley's federal and state claims based upon her Head Clerk application do not survive *Patterson* scrutiny, Amtrak's motion for an order granting it summary judgment on these two claims is granted.

### III. The Remaining Section 1981 and Section 296 Claims [6]

Although Bradley's claims with respect to the above three promotions satisfy the *Patterson* test, Amtrak contends that summary judgment is warranted as Bradley has not set forth sufficient evidence to support a reasonable finding of employment discrimination. Again, the Court disagrees.

The allocation of burdens of production and proof in employment discrimination cases was originally set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). In *McDonnell Douglas*, the Supreme Court held that, in order to state a valid employment discrimination claim, a plaintiff must first establish a prima facie case by showing that (i) she belongs to a protected class; (ii) she applied and was qualified for a job for which the employer was seeking applicants; (iii) she was rejected despite her qualifications; and (iv) after this rejection, the position was filled by a white employee or the employer continued to seek applications for the position. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *see also Patterson*, 491 U.S. at 186–87, 109 S.Ct. at 2377–78.

Once the plaintiff establishes a prima facie case, an inference of employment discrimination arises, *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981); *see also Patterson*, 491 U.S. at 187, 109 S.Ct. at 2378, and the burden shifts to the defendant to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected for legitimate, nondiscriminatory reasons. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094. In order for the defendant to satisfy its burden, "[i]t is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine*, 450 U.S. at 254–55, 101 S.Ct. at 1094. If the defendant does not respond to these allegations, judgment must be entered in favor of the plaintiff. *Id.* at 254, 101 S.Ct. at 1094.

---

**5.** Bradley bases her Head Clerk claim on her September 16, 1988 application for the position, not on her August 29, 1988 application.

**6.** This opinion will focus upon the standards for establishing an employment discrimination claim under federal law. Both parties recognize, however, that the standards under New York state law are the same. *See Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1180 (2d Cir. 1992); *Gibson v. American Broadcasting Cos., Inc.*, 892 F.2d 1128 (2d Cir.1989).

If the defendant is able to rebut the presumption of discrimination, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the reasons set forth by the defendant were merely pretextual and not the true reasons for plaintiff's promotion denial. *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825; *see also Patterson,* 491 U.S. at 187, 109 S.Ct. at 2378; *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. The plaintiff can establish that the employer's stated reasons were pretextual by demonstrating that she was equally or more qualified than the successful applicant, or by presenting evidence about the employer's "general policy and practice with respect to minority employment." *McDonnell Douglas,* 411 U.S. at 804–05, 93 S.Ct. at 1825.

■ Applying this law to the present case, Bradley has established a prima facie case. Bradley, a black woman, is indisputably a member of a protected class. Moreover, the Assistant to V.P., Senior Administrator, and Division Administrator positions were filled by white applicants. Further, the record establishes that Bradley was qualified for all three positions, but was nevertheless rejected by Amtrak. Promotion to the Assistant to V.P. position required a high school diploma, three to five years of administrative experience, ability to work under pressure, ability to communicate effectively, and satisfactory prior job performance. *See* P.E. "11". Bradley earned her high school diploma in 1962, accumulated ten years of administrative experience, *see* P.E. "40", and performed well as Chief Clerk for ten years. *See, e.g.,* P.E. "5".

Qualifications necessary to apply for the Senior Administrator position included two years of college or seven years of railroad experience, including three years in the Maintenance of Way or Structures Departments, familiarity with the labor assignment system or a similar system, knowledge of various labor agreements, ability to write and speak effectively, and, preferably, two years experience in handling claims, grievances, discipline trials, and safety investigations. *See* P.E. "16". The record indicates that Bradley met these qualifications as she had amassed sixteen years of railroad experience, including nine years in the Maintenance of Way Department, was familiar with the labor assignment system and all applicable labor agreements, and had accrued ten years experience in handling claims and grievances. *See* P.E. "18".

Applicants for the Division Administrator position were required to have a high school diploma, two years administrative experience, possess an understanding of discipline procedures, have knowledge of transportation employee agreements, and exhibit excellent oral and written skills. *See* P.E. "20". Bradley fulfilled each requirement necessary for the Division Administrator position as she received a high school diploma, accumulated ten years administrative experience, understood the discipline procedures, and was familiar with the relevant labor agreement. *See* P.E. "37". Thus, the Court finds that Bradley has properly raised an inference of discrimination by establishing a prima facie case.

■ Amtrak, however, has also met its burden of rebutting the inference of discrimination by articulating a legitimate, nondiscriminatory reason for Bradley's rejection in each of the three instances involved. Specifically, Amtrak has adduced evidence that tends to show that the white applicants who received each of the three jobs were more qualified than Bradley. Defendant's Statement of Uncontested Material Facts, at ¶¶ 33, 48, 53. According to Amtrak, the successful applicant for the Assistant to V.P. position, Michelle McGrail ("McGrail"), was more qualified as she had more experience in preparing budgets, monitoring budget variances, and "manpower administration," and had accumulated two years of college credits. *See* Cannito Declaration ("Cannito Decl."), at ¶ 4. As for the Senior Administrator position, Amtrak contends that the successful applicant, Joanne Kimble ("Kimble"), was more qualified since she fulfilled all requirements, *see supra,* p. 292, and had successfully filled in for the previous Senior Administrator on various occasions. *See* Laznik Declaration

("Laznik Decl."), at ¶ 3. Finally, Amtrak contends that Bradley was not as qualified as the successful applicant for the Division Administrator position, Thomas Gormley ("Gormley"), *see* Brown Declaration ("Brown Decl."), at ¶ 6, who had worked as an Inspector for Amtrak for twelve years. *See* P.E. "21".

■ Since Amtrak has presented evidence which rebuts the inference of discrimination raised by Bradley's prima facie case, Bradley now acquires the burden of proving, by a preponderance of the evidence, that Amtrak's stated reasons are pretextual. To meet this burden, Bradley has presented evidence that she was more qualified than the successful applicant for each of the three positions. Since there is conflicting evidence in the record with respect to this issue, however, the Court concludes that there is a genuine issue of material fact as to whether Amtrak's articulated nondiscriminatory reasons are pretextual.

As to the Assistant to V.P. position, the record establishes that McGrail, the successful candidate, was more experienced in budgetary matters, including budget preparation and monitoring. *See* Cannito Decl, at ¶ 4. McGrail also had a more extensive educational background as she had completed two years of college,[7] *id.*, whereas Bradley's college background consisted of only a few courses in history, English, and psychology. *See* P.E. "18". The record also indicates, however, that Bradley was more experienced in administrative policies and coordinating those policies with other departments. *See* P.E. "40".

With respect to the Senior Administrator position, the Amtrak manager who oversaw the selection process, Joseph S. Laznik, states that Kimble was selected because of her four years experience in Amtrak's Maintenance of Way and Structures Department and her excellent performance as a substitute for the former Senior Ad-

ministrator. *See* Laznik Decl., at ¶ 3. The record establishes, however, that Bradley had more experience in each area required in the job description. Specifically, Bradley had more experience in railroad operations, handling claims and grievances, and she had five more years in the Maintenance of Way Department. *See* P.E. "18". Moreover, the record establishes that Kimble did not receive a very favorable rating at her job interview. *See* P.E. "17". Since the record is replete with conflicting evidence, the trier of fact must make the final determination as to whether Bradley was not hired because she was less qualified or if this assertion is merely pretextual.

■ Bradley's discrimination claims based upon her denial for the Division Administrator position also raise a genuine issue of material fact on the issue of pretext. The record establishes that Gormley, the successful applicant, had worked as an Amtrak Inspector for twelve years. *See* P.E. "21". The record also establishes, however, that Bradley had sixteen years experience in Amtrak's Transportation Department and was familiar with the duties required of the Division Administrator. *See supra*, p. 292. Moreover, Gormley had no college background, *see* P.E. "21", whereas Bradley had accumulated some college credits. *See* P.E. "37". Thus, the claims based upon the Division Administrator position also raise issues of fact requiring resolution by a jury.

To further establish that Amtrak's stated reasons for denying her promotions are pretextual, Bradley has introduced evidence of her successive denials of promotions as well as Amtrak's "general policy and practice with respect to minority employment," as permitted under *McDonnell Douglas. See* 411 U.S. at 804–05, 93 S.Ct. at 1825. Specifically, Bradley points to the fact that she applied for and was denied acceptance for eight positions at

---

7. The fact that the Assistant to V.P. job description stated a "preference" for applicants with two years of college experience is not dispositive for two reasons. First, a college background was listed as a "preference" instead of a "requirement" in the job description. Second,

the allegations of discrimination in Bradley's other claims, based on the Senior Administrator and Division Administrator positions, lend support to plaintiff's claim that her denial of the Assistant to V.P. position was based on discriminatory motives.

Amtrak over a period of twenty-nine months. Although Bradley does not seek recovery for discrimination based upon all the positions for which she was denied promotion,[8] such denials at least raise a genuine issue of material fact as to whether Amtrak discriminated against Bradley because of her race. Additionally, the record contains evidence that other black employees, despite their qualifications, were denied promotions for three positions at Amtrak. For example, Elizabeth B. Jackson, a black woman, was denied promotion to the Assistant to V.P. position despite her experience at Amtrak and extensive educational background, including a college degree and twenty-three hours of graduate credits.[9] See P.E. "13". Three other black employees with college degrees and relevant experience, Janet O'Conner, Donna Livingston, and James R. Brawner, were similarly denied promotion to positions filled by white applicants.[10] Although it is unclear whether these denials are the result of racial discrimination, the record raises a genuine issue of material fact as to whether they are indicative of a pattern of discrimination at Amtrak and, consequently, whether Amtrak's stated reasons are pretextual.

## IV. State Tort Claims

### A. Intentional Infliction of Emotional Distress

■ Bradley also sues Amtrak for intentional infliction of emotional distress ("IIED"). Specifically, the complaint alleges that Amtrak "engaged in a pattern of outrageous and extreme conduct directed toward plaintiff which caused her severe emotional injuries." Complaint, at ¶ 27.

The law governing IIED claims in New York is well-settled. An action for IIED may lie "for conduct exceeding all bounds usually tolerated by decent society."

Fischer v. Maloney, 43 N.Y.2d 553, 557, 402 N.Y.S.2d 991, 992, 373 N.E.2d 1215, 1216 (1978) (quoting Prosser on Torts § 12, at 56 (4th ed. 1971)). In order to establish an IIED claim, the plaintiff must show that the defendant either intentionally or recklessly caused the plaintiff's emotional suffering. Freihofer v. Hearst Corp., 65 N.Y.2d 135, 143, 490 N.Y.S.2d 735, 741, 480 N.E.2d 349, 355 (1985); Fischer, 43 N.Y.2d at 557, 402 N.Y.S.2d at 992-93, 373 N.E.2d at 1216-17. According to the Second Restatement of Torts: "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46 subd. [1] cmt. d. (1977). It is also important to note that liability has not been recognized for ordinary employment discrimination claims. Murphy v. American Home Products Corp., 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 236, 448 N.E.2d 86, 90 (1983) (plaintiff not permitted to convert ordinary age discrimination claim into claim for IIED).

Consequently, Bradley cannot sustain an IIED claim. First, her claims are essentially ordinary employment discrimination claims. Second, the record is devoid of any evidence that Amtrak acted either intentionally or recklessly in causing Bradley's emotional suffering. See Freihofer, 65 N.Y.2d at 143, 490 N.Y.S.2d at 741, 480 N.E.2d at 355. Accordingly, Amtrak's motion for an order granting it summary judgment dismissing Bradley's IIED claim (Fifth Claim for Relief) is granted.

### B. Prima Facie Tort Claim

■ Bradley also alleges prima facie tort as an alternative to her employment dis-

---

**8.** As stated above, Bradley applied for four other positions in addition to the four positions which serve as a basis for her employment discrimination claims.

**9.** Amtrak argues that the Court should ignore the denial of Jackson's application since three white applicants with college degrees and similar experience were also denied the position. The Court finds this argument unpersuasive since a plaintiff in an employment discrimina-

tion action must establish only that the denied minority is as qualified as the white applicant. See, e.g., McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824.

**10.** Janet O'Connor applied for the Administrator, Small Business Development Office position. Donna Livingston and James R. Brawner applied for the Supervisor, Maintenance of Way Labor Relations position.

crimination and IIED claims.[11] Complaint, at ¶ 30. According to the complaint, Amtrak committed prima facie tort as its conduct was "intentional and was without justification or excuse and plaintiff suffered special damages through the loss of her promotions, reputation, wages, and benefits." Complaint, at ¶ 31.

 In order to recover for prima facie tort in New York, plaintiff must prove (i) the intentional infliction of harm, (ii) resulting in special damages,[12] (iii) without any excuse or justification, (iv) by an act or series of acts which would otherwise be lawful. *Freihofer,* 65 N.Y.2d at 142–43, 490 N.Y.S.2d at 741, 480 N.E.2d at 355 (citing *Curiano v. Suozzi,* 63 N.Y.2d 113, 117, 480 N.Y.S.2d 466, 469, 469 N.E.2d 1324, 1327, (1984); *Burns Jackson Miller Summit & Spitzer v. Lindner,* 59 N.Y.2d 314, 332, 464 N.Y.S.2d 712, 720, 451 N.E.2d 459, 467, (1983)).

The Court finds that Amtrak is entitled to summary judgment on three alternative grounds: (1) Bradley has failed to show that defendant intentionally caused harm, (2) Bradley has failed to properly allege special damages with particularity, and (3) the Court has upheld three of Bradley's employment discrimination claims.

### 1. Failure to Prove Intent

 In order to establish that a defendant intentionally caused harm, a plaintiff must show that the defendant intended to cause harm, not merely that the defendant intentionally engaged in certain conduct. *Marcella v. Arp Films, Inc.,* 778 F.2d 112, 119 (2d Cir.1985) (citing *Benton v. Kennedy—Van Saun Manufacturing and Engineering Corp.,* 2 A.D.2d 27, 28 152 N.Y.S.2d 955, 957 (1st Dept.1956)). Further, a plaintiff cannot establish intentional infliction of harm when the injury is "incidental to a defendant's primary business motive and not a significant part of a chosen plan of harassment." *Marcella,* 778 F.2d at 119. Thus, the discriminatory incidents must have occurred with the sole intention of injuring plaintiff. *Id.* In the present case, Bradley has failed to adduce any evidence which suggests that Amtrak engaged in discriminatory activity solely in order to injure her.

### 2. Particularity

 Alternatively, Bradley has failed to plead special damages with the requisite particularity. With respect to Bradley's prima facie tort claim, the complaint alleges only that "plaintiff suffered damages in the amount of $50,000, together with punitive damages in the amount of $500,000." Complaint, at ¶ 32. These damages are an amalgamation of "loss of her promotions, reputation, wages, and benefits." Complaint, at ¶ 31. New York courts are clear that allegations of damages in round figures without any further explanation do not satisfy the requirement that special damages be pled with particularity. *See O'Keefe,* 714 F.Supp. at 634; *Azby Brokerage Inc. v. Allstate Ins. Co.,* 681 F.Supp. 1084, 1088 (S.D.N.Y.1988); *Conniff v. Dodd, Mead & Co.,* 593 F.Supp. 266, 270 (S.D.N.Y.1984). Accordingly, the Court finds that Bradley has failed to plead special damages with the requisite particularity.

### 3. Other Claims Upheld

 Finally, as noted above, Bradley concedes that her prima facie tort claim cannot survive if any employment discrimination claim or the IIED claim is upheld. Since Bradley's employment discrimination claims based upon denials of the Assistant to V.P., Senior Administrator, and Division Administrator positions survive Amtrak's summary judgment motion, Bradley's pri-

---

**11.** Under New York law, recovery for prima facie tort is possible only when the plaintiff cannot establish that the defendant is liable for another cause of action. *See, e.g., Freihofer,* 65 N.Y.2d at 142–43, 490 N.Y.S.2d at 741, 480 N.E.2d at 355. This is because in order to establish prima facie tort, the plaintiff must establish that the defendant's conduct was otherwise lawful. If the defendant is liable for employment discrimination or IIED, Amtrak's conduct was not lawful and recovery for prima facie tort is barred.

**12.** Under New York law, special damages must be pled with particularity. *See, e.g., O'Keefe v. Niagara Mohawk Power Corp.,* 714 F.Supp. 622, 634 (N.D.N.Y.1989).

ma facie tort claim (Sixth Claim for Relief) is alternatively dismissed on this ground.

## CONCLUSION

For the reasons set forth above, Amtrak's motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, is granted in part and denied in part. Specifically, Amtrak's motion for summary judgment as to Bradley's federal employment discrimination claim under 42 U.S.C. § 1981 (Seventh Claim for Relief) and state employment discrimination claim under Human Rights Law Section 296 (First Claim for Relief) arising out of the rejection of her application for the Head Clerk position is granted and those claims are dismissed with prejudice. Amtrak's motion for summary judgment is also granted as to Bradley's IIED claim (Fifth Claim for Relief) and prima facie tort claim (Sixth Claim for Relief) and those claims are dismissed with prejudice. Amtrak's motion for summary judgment with respect to the remaining six claims, however, is denied. Specifically, Amtrak's motion to dismiss Bradley's employment discrimination claims under 42 U.S.C. § 1981 and New York Human Rights Law Section 296 arising out of the rejection of her application for the Assistant to V.P. (Eighth and Second Claims for Relief, respectively), Senior Administrator (Ninth and Third Claims for Relief, respectively), and Division Administrator positions (Tenth and Fourth Claims for Relief, respectively), is denied.

SO ORDERED.