**Randall B. GODINET, Plaintiff,**

v.

**MANAGEMENT AND TRAINING CORPORATION, d/b/a Flint Hills Job Corps Center, Defendant.**

**No. Civ.A. 96–4127–DES.**

United States District Court, D. Kansas.

Feb. 11, 1998.

**1350**

K. Gary Sebelius, Michael M. Walker, Wright, Henson, Somers, Sebelius, Clark & Baker, LLP, Topeka, KS, for Plaintiff.

Randall J. Forbes, S. Eric Steinle, Christina Collins, Frieden, Haynes & Forbes, Topeka, KS, for Defendant.

### MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendant's Motion for Summary Judgment (Doc. 83).

### I. INTRODUCTION

Randall B. Godinet ("Godinet"), an American Samoan, was first employed by the defendant, Management and Training Corporation ("MTC"), at the Flint Hills Job Corps Center ("Flint Hills") as a Residential Advisor in January of 1992. He was later promoted to Senior Residential Advisor by Tom Adams, the Group Life Manager at Flint Hills, and Kim Matsen, the Residential Living Supervisor. After Matsen announced that she was resigning to accept the Group Life Manager position at the Kittrell Job Corps Center in 1993, Godinet sought the Residential Living Supervisor position.

Godinet alleges that, at the same time that he was seeking the Residential Living Supervisor ("RLS") position, he was offered a position with the Oceanside, California, Boys and Girls Club at a substantially higher salary than he was being paid as Senior Residential Advisor ("SRA") at Flint Hills. Godinet further alleges that he turned down that offer based upon Adams' representations that Godinet was the top candidate for the RLS position. After Godinet rejected the offer from Oceanside, Flint Hills announced that Kristin Johnson, a white female who was Flint Hills' Counseling Supervisor, would take Matsen's place as the RLS. Adams, who made the decision to appoint Johnson as RLS, did not interview Godinet before announcing his decision.

Upon learning of Johnson's appointment as the RLS, Godinet requested a meeting with the key managers at Flint Hills for June 11, 1993, the following day. During this meeting, Godinet was informed that Johnson had been selected for the RLS position because she was better qualified. The managers also stated that they felt Godinet had done a good job and that they hoped he would continue to work there. Godinet asked if the managers were going to stick by the decision to place Johnson in the RLS position and they indicated that they were. At the close of this meeting, Godinet gave the Center Director his pre-written resignation letter which stated that he was leaving because he did not believe that the management had confidence in his supervisory abilities. Godinet gave two weeks' notice in his resignation and was paid for those two weeks; however, he did not work during that time because he was

told not to report for work after turning in his resignation.

After leaving his position as SRA at Flint Hills, Godinet applied for the Residential Living Manager position at the defendant's Kittrell Job Corps Center ("Kittrell"), a position which would report directly to Matsen as the Group Life Manager at Kittrell. Matsen told Godinet that he was the top candidate for the Kittrell position and that she was recommending that he be hired. In the mean time, Godinet contacted Hank Owens at the defendant's corporate headquarters and informed him that he had not been hired for the RLS position at Flint Hills and that he believed that Flint Hills had discriminated against him. After this contact, Mose Watkins, another officer at the corporate headquarters, called Matsen and recommended that Edison Mosley, a black male, be hired for the Kittrell position, even though Mosley had previously been fired from another Job Corps Center. After Matsen reiterated her desire to hire Godinet, she was removed from the hiring process, and Mosley was hired to fill the Kittrell position.

## II. SUMMARY JUDGMENT STANDARD

A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The rule provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *Id.* at 248. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* "Only disputes over facts that might properly affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir.1993). The movant may discharge its burden "by 'showing'—that

is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant need not negate the nonmovant's claim. *Id.* at 323.

Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmovant must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324 (interpreting Fed.R.Civ.P. 56(e)). Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Id.* at 322. Such a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323.

A court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986) (stating that "[t]he court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues"). The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson*, 477 U.S. at 249. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250.

## III. DISCUSSION

Defendant seeks summary judgment on plaintiff's claims that defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII") and 42 U.S.C. § 1981a. Title VII makes it an unlawful employment practice for an employer to dis-

charge any individual because of such individual's race, color, or national origin. 42 U.S.C. § 2000e–2(a)(1).

Although the plaintiff originally asserted state law claims pursuant to the Kansas Act Against Discrimination, Kan.Stat.Ann. §§ 44–1001, *et seq.,* he has voluntarily dismissed his state law claims and is now proceeding only on his Title VII claims. The remaining claims asserted by the plaintiff include the following: (1) failure to promote, (2) constructive discharge, and (3) retaliation.

The Tenth Circuit has adopted the burden-shifting format set out in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), as a framework for analyzing claims under Title VII when no direct evidence of discrimination exists. *E.E.O.C. v. Flasher Co., Inc.,* 986 F.2d 1312, 1316 (10th Cir.1992). This framework has also been applied to claims brought under 42 U.S.C. § 1981. *See Randle v. City of Aurora,* 69 F.3d 441 (10th Cir.1995) (applying the *McDonnell Douglas* framework to 42 U.S.C. § 1981 claim).

To survive summary judgment, the plaintiff must first establish a prima facie case of discrimination. *McDonnell Douglas,* 411 U.S. at 802. Once the plaintiff has established a prima facie case, a rebuttable presumption of discriminatory intent arises and the burden of production shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for [its challenged conduct]." *Id.* "[T]he defendant does not at this stage of the proceedings need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need to prove that the reasoning was applied in a nondiscriminatory fashion." *Flasher Co.,* 986 F.2d 1312, 1316 (10th Cir.1992) (citations omitted). However, the employer's reason for the adverse action "must be reasonably specific and clear." *Id.*

If the defendant employer meets this burden, the presumption of discrimination arising from the prima facie case "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). " 'At the summary judgment stage, it then becomes the plaintiff's burden to show that there is a genuine dispute of material fact as to whether the em-

ployer's proffered reason for the challenged action is pretextual—i.e. unworthy of belief.' " *Marx v. Schnuck Markets, Inc.,* 76 F.3d 324, 327 (10th Cir.1996), *cert. denied,* 518 U.S. 1019, 116 S.Ct. 2552, 135 L.Ed.2d 1071 (1996) (quoting *Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir.1995)). The plaintiff may establish pretext by showing " 'that a discriminatory reason more likely motivated the employer or … that the employer's proffered explanation is unworthy of credence.' " *Rea v. Martin Marietta Corp.,* 29 F.3d 1450, 1455 (10th Cir.1994) (quoting *Texas Dep't. of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). *See Randle,* 69 F.3d at 451.

The court must determine whether the evidence, interpreted in the light most favorable to the plaintiff, "could persuade a reasonable jury that the employer had discriminated against the plaintiff." *Jones v. Unisys Corp.,* 54 F.3d 624, 632 (10th Cir.1995) (quoting *Hooks v. Diamond Crystal Specialty Foods, Inc.,* 997 F.2d 793, 798 (10th Cir. 1993)). However, "a reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr.,* 509 U.S. at 511. Therefore, "showing pretext alone is not sufficient for the plaintiff to carry the day, although it may support an inference that the real reason for the employer's action is discriminatory." *Pilditch v. Bd. of Educ. of City of Chicago,* 3 F.3d 1113, 1116 (7th Cir.1993), *cert. denied,* 510 U.S. 1116, 114 S.Ct. 1065, 127 L.Ed.2d 385 (1994) (citing *St Mary's Honor Ctr.,* 509 U.S. at 511). "[T]he Title VII plaintiff at all times bears the 'ultimate burden of persuasion.' " *St Mary's Honor Ctr.,* 509 U.S. at 511 (citations omitted).

■ To establish a prima facie case of discrimination pursuant to Title VII, plaintiff must demonstrate

> (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and

the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnell Douglas*, 411 U.S. at 802. Plaintiff's burden in establishing his *prima facie* case is relatively light. *St. Mary's Honor Ctr.*, 509 U.S. at 515 ("what is required to establish the *McDonnell Douglas prima facie* case is infinitely less than what a directed verdict demands").

### A. Failure to Promote

The defendant does not argue on this claim that the plaintiff has not met his burden to establish a *prima facie* case. Thus, the burden shifts to the defendant to show a "legitimate, nondiscriminatory reason" for its failure to promote the plaintiff. *McDonnell Douglas*, 411 U.S. at 802. Defendant has asserted several reasons for its failure to promote Godinet to the RLS position at Flint Hills. First, defendant states that the job description for the RLS position indicated a preference that the person holding the position have a college degree. At that time, Johnson had a college degree, and Godinet had not yet completed his college education. Thus, the defendant argues it was a legitimate business judgment to hire Johnson, who had a college degree, over Godinet, who had more job-related experience.

Secondly, the defendant notes that Johnson had been employed at Flint Hills slightly longer than Godinet and that she had been in a management level position, as the Counseling Supervisor, during the entire time. Therefore, the move to the RLS position for Johnson was more like a lateral move than a promotion. On the other hand, the defendant asserts that Godinet had not held a management level position during his time at Flint Hills.

Third, the defendant asserts that Adams had directly supervised Johnson and felt that she had real management potential. The defendant also asserts that Adams knew that Johnson had an interest in moving up to the position of Group Life Manager or beyond and that he felt that acting as the RLS, in addition to working as the Counseling Supervisor, would better prepare her to become a Group Life Manager. Furthermore, the defendant asserts that Godinet's evaluation by Matsen indicated that he needed more time to develop in some areas.

■ Because the defendant has articulated legitimate, nondiscriminatory reasons for its failure to promote Godinet, the burden now shifts back to the plaintiff "to show that there is a genuine dispute of material fact as to whether [defendant]'s proffered reason for the challenged action is pretextual." *Marx*, 76 F.3d at 327. In *Randle*, the Tenth Circuit cited *Fuentes v. Perskie*, 32 F.3d 759 (3rd Cir.1994), as adopting an approach consistent with the one employed by the Tenth Circuit. *Randle*, 69 F.3d at 452 n. 16. In order to show that the employer's reasons are pretextual, the Third Circuit stated in *Fuentes* that the plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'" *Fuentes*, 32 F.3d at 765 (citations omitted).

■ Plaintiff states that the defendant's reliance upon Godinet's lack of a college degree is pretextual, pointing out that the job description for the RLS position states in relevant part as follows:

> Bachelor's degree in behavioral sciences or associated field and two years related experience, one of which must be in a supervisory capacity. Directly related experience may be considered in lieu of formal education requirements.

Thus, plaintiff asserts that his experience in the Residential Living area should have been considered in lieu of a college degree. Furthermore, plaintiff notes that he had only one more semester of work to complete in order to receive his bachelor's degree.

In addition, Godinet alleges that the use of Johnson's college degree to justify appointing her to the RLS position is pretextual because the defendant has inconsistently applied its educational requirements to favor white applicants. In support of this contention, plaintiff cites two examples. First, plaintiff states that the job description for the Counseling Supervisor position indicates that a master's

degree was preferred. When Adams hired Johnson for that position, she did not have a master's degree; however, one of the other applicants, a black female, did have a master's degree.

As another example, Godinet cites the manner in which Adams filled the OEP/Orientation Specialist position. This job description also indicated that the applicant should have a bachelor's degree, but that directly related experience could be considered in lieu of a degree. When Adams filled this position in 1992, he hired a white male who had worked for Flint Hills for five months as a bus driver and had no college degree, instead of an American Samoan who had been working as a Residential Advisor and had a bachelor's degree. Therefore, plaintiff complains that the defendant has either ignored or adhered to its educational preferences depending upon the result the defendant wanted to reach. The court finds that there is a genuine issue of material fact as to whether this justification for appointing Johnson to the RLS position is pretextual.

Godinet also asserts that the defendant's contention that Godinet had inferior supervisory and management experience is pretextual, as applied to the RLS position. Godinet claims that, as the SRA, he supervised up to fifteen people per shift, at least eight of whom were RA's. In contrast, Johnson only supervised four people while she served as the Counseling Supervisor. Godinet also served as the Center Duty Officer on each shift; therefore, he was responsible for the operation of the entire facility in the absence of the Center Director. Johnson, on the other hand, never served as the Center Duty Officer. Furthermore, Godinet asserts that he performed all of the functions of the RLS, except attending supervisory meetings, when Matsen was absent. Johnson, however, had no experience in the Residential Living area prior to her appointment as RLS. Therefore, the court finds that the plaintiff has shown that a genuine issue of material fact exists as to whether this reason for placing Johnson in the RLS position is pretextual. *See Bradley v. Nat'l R.R. Passenger Corp.,* 797 F.Supp. 286, 292–94 (S.D.N.Y.1992) (when there is conflicting evidence regarding whether plaintiff was more qualified than other applicants, there is a genuine issue of material fact).

■ Godinet also contends that the defendant's assertion that Johnson had management potential and Godinet needed more time to develop is pretextual. Godinet contends that Adams' evaluations of Johnson do not support the claim that she had management potential and that Johnson told one of her co-workers that she was hesitant about assuming the RLS position. On the other hand, Godinet asserts that Matsen's evaluations of him indicate that he had potential for promotion and that Adams encouraged him to apply for the RLS position. Furthermore, Godinet points out that, although Adams stated in his affidavit that he felt Godinet's evaluation indicated that he needed more time to develop, Adams later stated in his deposition that he could not recall if he reviewed Godinet's evaluation prior to appointing Johnson to the RLS position. Finally, Adams asked Matsen who she would recommend for the RLS position, and she recommended Godinet. The court finds that the plaintiff has demonstrated that there is a genuine issue of material fact as to whether this reason was pretextual. Because the court has concluded that the plaintiff has shown each of the reasons articulated by the defendant may be pretextual, the court need not consider, at this time, the other allegations made by plaintiff to show pretext.

### B. Constructive Discharge

■ To establish constructive discharge, plaintiff must demonstrate that defendant, by its illegal discriminatory acts, made working conditions so difficult that a reasonable person in his position would feel compelled to resign. *Daemi v. Church's Fried Chicken,* 931 F.2d 1379, 1386 (10th Cir.1991). This standard is applied objectively; the plaintiff's subjective views are irrelevant to the inquiry. *Irving v. Dubuque Packing Co.,* 689 F.2d 170, 172 (10th Cir.1982). "The intolerable conditions necessary for a constructive discharge claim must be the result of the employer's discriminatory acts, not plaintiff's general discontent with the insensitivity of [his] fellow employees." *Stalnaker v. KMart Corp.,* 950 F.Supp. 1091, 1097 (D.Kan.1996) (citing *Hirschfeld v. New Mexico Corrections Dep't,* 916 F.2d 572, 580 (10th Cir.1990)). Moreover, "the employer's actions must be

intended by the employer as an effort to force the employee to quit." *Irving,* 689 F.2d at 172 (citing *Muller v. United States Steel Corp.,* 509 F.2d 923 (10th Cir.1975), *cert. denied,* 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975); *Johnson v. Bunny Bread Co.,* 646 F.2d 1250 (8th Cir.1981)).

Defendant alleges that Godinet has not made a *prima facie* case on his constructive discharge claim. Plaintiff relies mainly upon the same facts discussed above to support his constructive discharge claim. In addition, plaintiff claims that he was told that he would have to train Johnson for the RLS position and that he had to seek counseling as a result of the defendant's failure to promote him.

 Failure to promote, alone, is not sufficient to support a claim of constructive discharge. *Irving,* 689 F.2d at 172. Plaintiff has not alleged any facts which would tend to show that he had been asked to resign or that the defendant had threatened to fire him. The plaintiff also has not alleged that the defendant planned to reduce his pay, demote him, or change his job responsibilities. *See Clowes v. Allegheny Valley Hosp.,* 991 F.2d 1159, 1161 (3rd Cir.1993), *cert. denied,* 510 U.S. 964, 114 S.Ct. 441, 126 L.Ed.2d 374 (1993). Furthermore, plaintiff fails to allege that the defendant intended to force him to quit. Instead, he argues that, even though the Flint Hills management personnel asked him to continue working for the defendant, those comments were made only to ensure that someone competent would be available to train Johnson. *See Irving, supra* (requiring that employer intended to force employee to quit). Although the court does not doubt that plaintiff was distraught after Johnson was named as the RLS, the court cannot conclude that plaintiff has established a *prima facie* claim for constructive discharge.

## C. Retaliation

 "To establish a prima facie case of retaliation [plaintiff] must show that: (1) [he] engaged in protected opposition to Title VII discrimination or participated in a Title VII proceeding; (2) [he] suffered an adverse employment action contemporaneous with or subsequent to such opposition or participation; and (3) there is a causal connection between the protected activity and the adverse employment action." *Cole v. Ruidoso Mun. Sch.,* 43 F.3d 1373, 1381 (10th Cir. 1994). In order to prove a *prima facie* case of retaliation, the plaintiff must show that the person who made the adverse employment decision knew about the plaintiff's protected activity. *See Torre v. Federated Mut. Ins. Co.,* 897 F.Supp. 1332, 1367–68 (D.Kan.1995); *Anderson v. Phillips Petroleum Co.,* 861 F.2d 631, 635 (10th Cir.1988) (assuming, without deciding, that plaintiff must show person who made adverse employment decision was aware of protected activity).

 In this case, the court finds, and the defendant does not appear to contest, that Godinet met the first requirement to prove a *prima facie* case by informing Owens at the defendant's corporate headquarters that he planned to file a discrimination claim against the defendant. The court also finds, and the defendant does not seem to contest, that plaintiff met the second requirement because the defendant failed to hire him at Kittrell after he announced his intention to file a discrimination claim. However, defendant argues that plaintiff has not met the third requirement, namely that there was a causal connection between his intention to file a discrimination claim against the defendant for its failure to promote him and the defendant's failure to hire him at Kittrell.

Godinet alleges that he told Owens that he intended to file a discrimination claim against the defendant for its failure to promote him. Although Owens did not call Kittrell, Watkins, who worked with Owens at the corporate headquarters, did call Matsen at Kittrell shortly after Godinet's call to Owens and recommended that Kittrell hire Mosley instead of Godinet. Furthermore, plaintiff notes that Mosley was hired by Kittrell pursuant to Watkins' recommendation, despite the fact that his application had already been rejected for the Group Life Manager's position that Matsen had accepted, a position which he had held at other Job Corps Centers, and despite the fact that Mosley was fired from his previous Job Corps position. Thus, although Godinet cannot provide direct evidence that the Kittrell managers who hired Mosley knew about Godinet's intention

to file a discrimination claim, Godinet has presented enough indirect evidence for the court to conclude that this is an issue of fact to be decided by a jury. As a result, the court concludes that Godinet has shown a sufficient *prima facie* case to survive summary judgment.

Since plaintiff has established a *prima facie* case, the burden shifts to the defendant to show a "legitimate, nondiscriminatory reason" for its failure to hire plaintiff. *McDonnell Douglas*, 411 U.S. at 802. Defendant contends that Mosley was more qualified than Godinet for the Kittrell position. Plaintiff, however, asserts that this is pretextual. Although defendant argues that Mosley had a college degree and over ten years of Job Corps experience, including some management level positions, plaintiff asserts that Mosley had already been rejected by Kittrell for the Group Life Manager position, for which he was also qualified. Plaintiff further asserts that the reason Mosley had been rejected for the Group Life Manager's position was that the Kittrell management had discovered that Mosley was fired, or, at best, left under questionable circumstances, from his last Job Corps position. As a result, plaintiff claims that Mosley would never have been hired for the Kittrell position if Watkins had not called and recommended him. Therefore, the court finds that plaintiff has presented enough evidence to show that there is a genuine issue of material fact with regard to whether defendant's reason for hiring Mosley is pretextual.

**IT IS THEREFORE BY THE COURT ORDERED** that the defendant's Motion for Summary Judgment (Doc. 83) is denied in part and granted in part. Defendant's motion for summary judgment is denied as to plaintiff's failure to promote and retaliation claims. Defendant's motion for summary judgment is granted as to plaintiff's constructive discharge claim.